**PEOPLE OF STATE OF ILLINOIS, for Use of TRUST CO. OF CHICAGO et al., v. MARYLAND CASUALTY CO. et al.**

**MARYLAND CASUALTY CO. et al. v. BOWEN et al.**

**Nos. 7963, 7969.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1942.

See, also, D.C., 2 F.R.D. 241.

Joseph D. Ryan, Louis P. Miller, and Jack L. Sacks, all of Chicago, Ill., and John E. Cassidy, Louis F. Knoblock, and John F. Sloan, Jr., all of Peoria, Ill., for appellants

J. F. Dammann, Geo. Fiedler, Louis L. Dent, Geo. M. Weichelt, John P. Hampton, Roger D. Doten, Walter Brewer, and Edward J. Farrell, all of Chicago, Ill., for appellees.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

There are two sets of plaintiffs in this appeal: first, the People for the use of the Trust Company of Chicago, administrator of the estates of four decedents to recover for their debts; and second, the People for the use of a number of individual plaintiffs to recover for personal injuries. The complaints allege identical facts, except as to the parties plaintiff. The complaints charge that it was the duty of A. L. Bowen and Blanche Fritz, Director and Assistant Director, respectively, of the Department of Public Welfare, and Dr. A. C. Baxter, Director of the Department of Public Health of the State of Illinois, and Dr. Ralph T. Hinton, as Managing Officer of the Manteno State Hospital, a State institution for the treatment of the insane, to furnish safe drinking water to persons in the hospital and on the premises thereof; that the officers carelessly, negligently, wantonly and wilfully permitted the water in the water supply system of the Manteno State Hospital to become dangerously contaminated with typhoid bacilli, and to continue so contaminated, although they had the means or could have obtained the means to enable them to furnish safe drinking water; that as a result of said negligent, wanton, and wilful misconduct of these officers in failing to furnish safe drinking water, the persons in the hospital and on the premises, the decedents and the other persons for whom the actions are brought became infected with typhoid fever, and four died and the rest were injured.

The defendants in the original complaints were sureties upon the afore-mentioned officers' bonds. Neither the officers nor the departments of which they were the heads were sued. The defendant-sureties as third party plaintiffs filed their petitions against the said officers as third party defendants, alleging that by the terms of their contracts of suretyship with the officers, the officers were, if there was a breach of the bond, personally liable, and were to save harmless the sureties; that the officers had on demand refused to do so; and judgment against the third party defendants was prayed. An order was made making said officers third party defendants. Thereafter, the third party defendants made a motion to dismiss both the original complaint and the third party complaint. The motion was sustained, and the court entered an order dismissing the original complaint and the third party complaint. The plaintiffs appeal from so much of the judgment as dismissed their complaints, and the third party plaintiffs have filed a cross-appeal from so much of the judgment as dismissed their third party complaint.

On these appeals the questions presented are:

1. Whether said officers are liable for their alleged negligent, wanton and wilful failure to furnish safe drinking water to patients in the Manteno State Hospital and to others on the premises; and

2. If there is such liability, whether there could be recovery against the sureties upon the official bonds.

Neither the decedents nor the other injured persons were inmates of the Manteno State Hospital, but they were alleged to have been lawfully employed at construction work on the premises—by whom, it is not alleged. It is the contention of the plaintiffs as alleged in their complaints and asserted in their brief that it was the duty of the officers "to cause safe water to be furnished at the Manteno State Hospital";[1] that this duty stems from the statutes of Illinois Ill.Rev.Stat.1941, c. 127, §§ 3, 55 et seq., that created the Department of Public Health of which Dr. Baxter was Director; that it was the Department's duty to supervise the health and lives of the people of the State, and to act in a supervisory capacity relative to the sanitary quality and adequacy of public water supplies; that it was the Department's duty to determine standards of purity of drinking water; that it was the Department's duty

---

[1] From plaintiffs' brief.

to make such sanitary investigations as it might deem necessary for the preservation and improvement of public health; that it was the Department's duty to maintain laboratories to examine water; and that it was the Department's duty to make sanitary, health and other inspections and examinations for the charitable, penal and reformatory institutions. It was alleged by the plaintiffs also that it was further the duty of the Department to investigate into the cause of dangerously contagious and infectious diseases when existing in epidemic form, and to take steps to restrict and suppress such diseases when the local health officers neglected or refused to take the necessary measures.

Likewise, it is contended that the Director and the Assistant Director of the Department of Public Welfare owe the same duty, and that this duty stems from the statutes of Illinois, Ill.Rev.Stat.1941, c. 127, §§ 3, 53 et seq., creating the Department and providing that the Board of Administration of the Department shall exercise executive and administrative supervision over the charitable institutions of the State. The Board has the power to appoint and remove superintendents or managing officers of the State charitable institutions, as well as all other employees of the institutions. The Board was given power to promulgate necessary rules and regulations. It was also the duty of the Board to visit each State institution at least once a year and inspect every part of the institution. It was further the duty of the Department to examine into the condition of the buildings, grounds, and other property connected with the State charitable institutions, and in case of an emergency, such as the breakdown of equipment, provision was made for making funds available promptly for the repair thereof.

■■ Thus it will be seen that the statutes relied upon are the statutes which create important executive departments of the State of Illinois and provide officers to administer such departments. The statutes then provide for the powers and duties of these officers, in order that the State may carry out the functions of supervising the health of the people of Illinois, and discharge its duty to provide institutions for the care and treatment of the insane and for the supervision thereof as to their sanitary and health conditions. In the discharge of such obligations directed by the statutes, the State of Illinois is exercising a governmental function under its police power, which authorizes it to look after the health and welfare of its citizens. People ex rel. Barmore v. Robertson, 302 Ill. 422, 427, 134 N.E. 815, 22 A.L.R. 835.

No specific duty to furnish safe drinking water at the Manteno State Hospital is provided by statute. If any exists, it must stem from the general undertaking assumed by the State of Illinois to provide generally for the health and welfare of its citizens in and out of State institutions. This is a duty owing by the State to its citizens. This is not a duty owing by these officers of the Department of Health and the Department of Public Welfare to anyone. The officers are the mere instrumentalities or agents through which the State undertakes to discharge its assumed duty to its citizens. When the State defines by statute the powers and describes the duties of the officers of these departments, it is not creating duties the officers owe to the individuals who may constitute the general public of Illinois; it is merely outlining the State's assumed public duty.

■ In such a situation, the law seems to be clear that if the duty discharged is a public duty and not a duty which the individuals owe to any particular person, then for their negligence or wanton or wilful omission in the performance of this public duty, the officers are not liable, except to the State. (Note Ill.Rev.Stat.1939, Ch. 38, par. 449, providing for the prosecution of these officers if they do not perform their duty.) See, also, People v. Bowen, 376 Ill. 317, 33 N.E.2d 587.

The rule applicable in a case of this kind is expressed correctly in Cooley on Torts, (1932 Ed. Sec. 300) as follows:

"Sec. 300. When Officers Liable to Private Suits. * * * Now, no man can have any ground for a private action until some duty owing to him has been neglected; and if the officer owed him no duty, no foundation can exist upon which to support his action.

\* \* \* \* \* \*

"The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution.

On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages."

The author of the same text, Section 301, illustrates the application of the rule as follows:

"Sec. 301. Quarantine Officer. Another illustration of the general rule is that of the quarantine officer. His duty requires him to take the proper steps to prevent the spread of contagion, and he will be culpable in a very high degree if he neglects to do so, because the duty is a public duty of the very highest importance and value. Let it be supposed that a neglect occurs, and that a great number of persons are infected in consequence. Not one of these persons can demand of the officer a personal redress. The reason is obvious: The duty was laid on the officer as a public duty—a duty to protect the general public —but the office did not charge the incumbent with any individual duty to any particular person. If one rather than another was injured by the neglect, it was only that the consequences of the public wrong chanced to fall upon him rather than upon another; just as the ravages of war may chance to reach one and spare another, though the purpose of the government is to protect all equally. The duty imposed upon the officer was a duty to the public— to the state, of which the individual sufferer was only a fractional part, and incapable as such of enforcing obligations which were not individual but general. If a policeman fails to guard the premises of a citizen with due vigilance, the neglect is a breach of duty of exactly the same sort as when, finding the same citizen indulging in riotous conduct, he fails to arrest him; and if the citizen could sue him for the one neglect, he could also for the other. And here it will be noted that the duty neglected in either case is in no proper sense discretionary."

See also these cases: Nagle v. Wakey, 161 Ill. 387, 43 N.E. 1079; Holgerson v. City, 63 N.D. 155, 246 N.W. 641; Smith v. Iowa City, 213 Iowa 391, 239 N.W. 29; Miller v. Ouray Electric Light & Power Co., 18 Colo.App. 131, 70 P. 447; Svenson v. Brix, 156 Or. 236, 64 P.2d 830.

Since the officers in this case were discharging a public duty and not a duty they owed the individuals in the case at bar, there can be no liability on the part of the officers to such parties. There being no duty, there can be no liability. Since the officers are not liable to the plaintiffs for their conduct, there can be no action by the plaintiffs upon the official bonds of the officers.

There was no error in dismissing the plaintiffs' complaints as they failed to state a cause of action, and the judgment dismissing the complaints is affirmed.

Since this disposes of the matter in controversy, we are not required to pass upon the cross-appeal.

MINTON, Circuit Judge (Continuing).

While the Court was in agreement as to the merits if we had jurisdiction, the writer of the Court's opinion believes there is a jurisdictional question involved. My colleagues do not think so. I believe the point of jurisdiction worth presenting in the hope that discussion of it may lead to clarification.

The third party defendants came in by virtue of a third party complaint in a purely ancillary proceeding to determine liabilities between the third party plaintiffs and the third party defendants. Jurisdiction of this third party proceeding, it may be conceded for the sake of argument, did not require diversity of citizenship. The jurisdiction is determined by the diversity of citizenship of the original plaintiffs and the original defendants.

As long as the third party defendants remained in their capacity as third party defendants in the ancillary proceeding for the purpose of litigating the separate matters in controversy between the third party plaintiffs and the third party defendants, no complaint, we shall assume, could be made that the third party defendants were of the same citizenship with the plaintiffs in the original or parent suit. They were litigating nothing and were in no controversy with the plaintiffs to the original suit as long as they remained in their character or capacity as third party defendants in the ancillary proceeding.

But the third party defendants did not remain in such character or capacity. Upon admission, they proceeded at once to attack the sufficiency of the complaint in the parent action by filing a motion to dismiss the parent action because it did not state a cause of action against either the third party plaintiffs or the third party defendants. The original plaintiffs, instead of objecting to the third party defendants

deserting their role in the ancillary proceeding, proceeded to litigate with them the sufficiency of the complaint in the parent suit, both as to the original defendants and the third party defendants. There was then a controversy between citizens of Illinois as plaintiffs and citizens of Illinois as full-fledged defendants. When the third party defendants abandoned their role as third party defendants and assumed, without objection, their role as full-fledged defendants attacking the sufficiency of the original complaint both as to themselves and the original defendants, they destroyed diversity of citizenship and hence the jurisdiction of the District Court.

It cannot be argued that the rules countenance such action or that it might be so much more convenient to recognize such proceedings, for neither the rules nor legislative action based on considerations of expediency can give jurisdiction where it is not authorized by the Constitution. Where the basis of the jurisdiction is diversity of citizenship, the rules cannot authorize the court to assume or retain jurisdiction where no diversity exists. The Constitution has not given jurisdiction to United States courts of controversies where no diversity of citizenship exists and where none of the other grounds of jurisdiction enumerated in the Constitution are present, as they are not in the case at bar.

I recognize that there are several District Court cases that apparently hold contrary to my views. Most of these, however, simply decide that "an independent basis of jurisdiction is not necessary to support a third party proceeding."[2] If I conceded this, still such rule has no application to a situation where the third party defendant leaves his ancillary position and stands forth as a full-fledged defendant in opposition to the parent action.

In the case of Williams v. Keyes, 5 Cir., 125 F.2d 208, 209, Keyes, a successful litigant, sued the surety company upon a supersedeas bond. In addition to the surety company, the bond was signed by four individuals as commissioners of the City of Miami, Florida. After removal to the District Court on the ground of diversity of citizenship, the plaintiff being a citizen of Florida and the surety company of Maryland, the surety company filed as third party plaintiff a proceeding to make the commissioners third party defendants, alleging that they had promised to indemnify the surety company, and asked judgment against the commissioners on that obligation. The third party defendants filed a motion to remand on the ground that the controversy was not one wholly between citizens of different States, since they were of the same State as the plaintiff to the original action. They also filed a motion to dismiss the original complaint as failing to state a cause of action. "The motion to remand was denied, and without further material pleadings the cause proceeded to trial."[3]

From the court's opinion in the Keyes case, it does not appear what happened to the motion to dismiss. Judgment was had against the surety on the bond for $4,356 and against the third party defendants for the same amount on their contract to indemnify. The court held that the motion to remand was properly overruled, and the judgments were proper under the practice and were authorized by the original complaint and the third party complaint. There is no evidence that in that case the third party defendants abandoned their position as such to assume the position as full-fledged defendants to the parent suit, except to file a motion to dismiss, which apparently was not ruled upon, and the parties proceeded to trial and the settlement of the issues in the parent suit and the third party suit, observing the positions in the one as parent and in the other as ancillary.

The view which I entertain is supported by Hoskie v. Prudential Ins. Co., D.C., 39 F.Supp. 305, 306. In that case an action for personal injury was brought by a New York citizen against the Prudential Insurance Company, a New Jersey corporation. The defendant was permitted to institute a third party proceeding against the Lorrac Real Estate Corporation on a contract of indemnity. When the Lorrac Real Estate Corporation was brought in as defendant, the plaintiff amended his complaint to state a cause of action against the third party defendant. The latter made a motion to dis-

---

[2] Crum v. Appalachian Electric Power Co. et al., D.C.1939, 27 F.Supp. 138; Bossard v. McGwinn et al., D.C.1939, 27 F. Supp. 412; Kravas et al. v. Great Atlantic & Pacific Tea Co., D.C.1939, 28 F. Supp. 66; Morrell v. United Air Lines Transport Corporation, D.C.1939, 29 F. Supp. 757; Malkin v. Arundel Corporation, D.C.1941, 36 F.Supp. 948; Sussan v. Strasser, D.C.1941, 36 F.Supp. 266.

[3] From the court's opinion in Williams v. Keyes, supra.

miss, and the court recognized that the act of the plaintiff in amending his complaint and making the third party defendant a full-fledged defendant destroyed the ancillary character of the third party proceedings and the jurisdiction of the court. The court said:

"It has become reasonably well established that diversity of citizenship is not necessary to support the claim of a defendant against a third party defendant. That jurisdiction has been held to rest upon the jurisdiction of the main action, the third party proceeding being regarded as ancillary to the main action. Bossard v. McGwinn, D.C., 27 F.Supp. 412.

"Here, however, we are not concerned with the jurisdiction of the third party action, but that as between the plaintiff and the third party. Admittedly the plaintiff could have joined Lorrac Real Estate Corporation as a party defendant in his original complaint. That he chose not to do, probably because he sought the jurisdiction of the Federal Courts, and the joinder of Lorrac Real Estate Corporation would have made that impossible, there being no federal grounds of jurisdiction other than diversity of citizenship.

"It is difficult to comprehend why this Court should now have jurisdiction over a claim of a New York plaintiff against a New York defendant after they are brought together through the circuitous means of the third party complaint and then an amended main complaint, whereas had the procedure been direct no jurisdiction would have existed. Jurisdiction cannot be based upon any theory of an ancillary proceeding, for by reason of the amended complaint there no longer is any main action in which diversity exists. Nor does this case fall within the principles of the rule that once having had jurisdiction, this Court retains jurisdiction. Here there never was jurisdiction over any claim of the plaintiff against Lorrac Real Estate Corporation. Moreover, to accept jurisdiction herein might open the door to circumvention of the diversity rule by use of a friendly original defendant."

Because the amended complaint would bring about a defeat of the court's jurisdiction, the court treated it as a nullity and the proceedings in the parent suit and the ancillary suit as unaffected by it, and thus maintained the court's jurisdiction and the true character of the third party proceedings. This the District Court could do in shaping the record to spell out its own jurisdiction. We have no such authority. We must accept the record as made below, and that clearly presents a controversy between citizens of Illinois who are plaintiffs and citizens of Illinois who are defendants.

The plaintiffs in the parent suit should have declined the issue tendered to them by the motion of the third party defendants and declined to litigate that motion with the third party defendants (see Satink v. Township of Holland, D.C., 31 F.Supp. 229), and they should have taken steps to confine the third party defendants to their position as parties to the ancillary proceeding. The plaintiffs could not have brought this action with the defendants joined as they were when the judgment of dismissal was entered. There would have been no diversity. The defendants should not be permitted to come into court in the guise of an ancillary party, only to remove the cloak after admission and step forth as full-fledged defendants. To permit such an easy evasion in the practice would greatly enlarge the jurisdiction of the Federal Courts, contrary to the admonition in Rule 82, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Since there is no diversity, there is no jurisdiction, and the appeal should be dismissed.