Amy NELSON, by her next friend, Robert J. Wharton, et al., Plaintiffs,

v.

David R. FREEMAN, et al., Defendants.

No. 80–0874–CV–W–1.

United States District Court,
W. D. Missouri, W. D.

April 7, 1982.

John E. McKay, Benson & McKay, Kansas City, Mo., J. D. Williamson, Jr., Independence, Mo., for plaintiffs.

John Ashcroft, Atty. Gen., State of Mo., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, Mo., for State defendants.

## MEMORANDUM AND ORDERS GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF STATE DEFENDANTS

JOHN W. OLIVER, Senior District Judge.

Pending are (1) plaintiffs' motion for summary judgment and sanctions pursuant to Rule 37, Fed.R.Civ.P. and (2) defendants'[1] motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiffs' motion will be denied and defendants' motion will be granted for reasons we now state.

### I.

This case stems from the tragic incident of child abuse that caused the untimely death of eight year old Tammy Nelson. Plaintiffs are Amy, Frank and Mike Nelson, minor sister and brothers, respectively, of the deceased Tammy Nelson, proceeding by their next friend, Robert W. Wharton; and James A. Nelson, natural father of Tammy Nelson. Defendant Freeman is named in the complaint in his official capacity as State Director of the Missouri Division of Family Services (hereinafter referred to as D. F. S.); Lewis is named as Jackson County Director of D. F. S.; Donaldson[2] is named as supervisor of defendants Keatings and White; Keatings and White are named as employees of D. F. S. whose duties include investigation of "hotline" calls wherein child abuse and mistreatment of Missouri children are reported.

The complaint alleges that:

1. On December 3, 1980 the complaint was dismissed as to defendant Missouri Division of Family Services by order of Judge Sachs. The motion for summary judgment under consideration was filed by defendants Freeman, Lewis, Donaldson, Keatings and White, all of whom are officials and employees of the State of Missouri, as more particularly identified in the next paragraph of the text. Defendants Audrey Nelson—Tammy Nelson's mother, and Theodore Gulley, both of whom are presently confined in the Missouri Department of Corrections, and three other named but as yet unidentified "John Doe" defendants who allegedly performed various acts of perversion and sexual intercourse upon eight year old Tammy Nelson, are also named as party defendants. The liabil-

ity of those defendants is not presented in the pending motion for summary judgment. It is therefore to be understood that subsequent references to the "defendants" refer only to the defendants who are officials and employees of the State of Missouri and do not make reference to defendants Audrey Nelson, Theodore Gulley, or the other as yet unidentified "John Doe" defendants.

2. Plaintiffs were granted leave to file an amended complaint adding defendant Anita Donaldson on July 22, 1981. Otherwise, the First Amended Diversity of Citizenship Complaint for Damages is identical to the original complaint filed September 24, 1980.

10. On or about January 1, 1978 and continuing thereafter at 1935 Belleview, Kansas City, Jackson County, Missouri, defendant Audrey Nelson performed various acts of perversion and sex with several men including defendant Theodore Gulley, John Doe One, John Doe Two, and John Doe Three.

11. Tammy Nelson, Amy Nelson, Frank Nelson, and Mike Nelson were required to watch and/or participate in said acts of perversion and sex with the aforenamed person or persons, all of which constituted child abuse and mistreatment of said children.

12. On or about January 1, 1978 and continuing thereafter, several concerned citizens reported said child abuse and mistreatment of said children to D. F. S. pursuant to the hotline call system wherein child abuse and mistreatment of Missouri children are reported. Also the reputations and prior bad acts of defendant Audrey Nelson and defendant Gulley were reported to D. F. S.

13. Acting under the direction and control of their aforenamed supervisors, and in the regular and ordinary course of their duties as investigators for D. F. S., defendants Keatings and White undertook to investigate some but not all of the hotline calls concerning the aforenamed Nelson children.

14. From January 1, 1978 until August 10, 1979 the actions of D. F. S., its aforenamed directors and aforenamed investigators were negligent in the following respects, to wit:

(a) not investigating all hotline calls concerning said Nelson children;

(b) failing to adequately investigate or detect the aforedescribed child abuse and mistreatment of the Nelson children through hotline calls and/or welfare investigations of Audrey Nelson;

(c) failing to adequately investigate the aforedescribed reputations and prior bad acts of defendant Audrey Nelson and defendant Theodore Gulley;

(d) improperly classifying said hotline calls and/or welfare investigations

as unsubstantiated, thereby foreclosing future investigation of the plight of the Nelson children;

(e) failing to remove the Nelson children from the residence and custody of Audrey Nelson either when D. F. S., its directors and investigators knew or should have known that the environment of said children was injurious to their welfare;

(f) failing to report said child abuse and mistreatment of the Nelson children to the Jackson County Court or prosecutor or to request the Court or prosecutor to detain the children out of Audrey Nelson's custody.

15. Further, the actions or omissions of defendants David R. Freeman, J. Joseph Lewis, and Anita Donaldson in the following respects, to wit:

(a) constituted a willful refusal to perform the duties enumerated in paragraph 14(a)–(f) herein;

(b) constituted negligence in the hiring, training and continued employment of defendant Keatings and/or defendant White, each of whom were known or should have been known to be unqualified, unable or negligent with regard to fulfilling the responsibilities of an investigator of D. F. S., and in particular the duties and responsibilities enumerated in paragraph 14(a)–(f) herein;

(c) constituted direction, encouragement, personal cooperation in and/or ratification of the aforedescribed acts or omissions of defendants Keatings and White.

16. Further, the actions of defendants Keatings and White constituted willful refusal to perform the duties and responsibilities of a D. F. S. investigator as applied to plaintiffs.

17. On July 25, 1979 at 1935 Belleview, Kansas City, Jackson County, Missouri defendant Audrey Nelson continued her course of child abuse and mistreatment of said children by selling eight-year old Tammy Nelson for approximately Forty Dollars ($40.00) to defendant

Theodore O. Gulley for the purpose of performing various acts of perversion and sex. Defendant Gulley shortly thereafter, while in the children's home and in front of the remaining children, performed various acts of perversion and sexual intercourse upon eight-year old Tammy Nelson.

18. As a direct and proximate result of defendants' individual and several actions and inaction, each and every child received severe and continuing injuries of a permanent and progressive nature including pain, suffering, mental distress, loss of sleep, nightmares, and loss of appetite. In addition, Tammy Nelson suffered massive bleeding and tearing of her entire body.

19. As a direct and proximate result of defendants' individual and several acts and inaction aforedescribed, Tammy Nelson was hospitalized and died on August 10, 1979; thereby, plaintiff James A. Nelson, the natural father of Tammy Nelson, suffered direct pecuniary loss, both past and future, including travel and lodging expenses, time off work, loss of services, loss of companionship, loss of comfort, all as the direct and proximate result of his daughter's death.

\*   \*   \*   \*   \*   \*

21. The individual and several acts and omissions of defendants David R. Freeman, J. Joseph Lewis, Anita Donaldson, Ertha Keatings, and Dinah White showed complete indifference to or conscious disregard for the safety of others.

## II.

■ Plaintiffs' motion for summary judgment and sanctions is premised upon the failure of defendants to file a timely answer to plaintiffs' first amended complaint of July 29, 1981. As noted, the first amended complaint is identical to the original complaint but for the addition of defendant Donaldson. Defendants' answer to the amended complaint was filed October 26, 1981. Plaintiffs did not object to the filing of the answer at that time. The Court finds that defendants' neglect to file a timely answer to plaintiffs' amended complaint is excusable and that plaintiffs were not prejudiced as a result. Plaintiffs' motion for summary judgment and for sanctions will therefore be denied.

In defendants' response to plaintiffs' motion for summary judgment and sanctions, defendants move the Court for entry of an order granting leave to file the October 26, 1981 answer out of time. That motion will be granted *nunc pro tunc.*

## III.

■ Plaintiffs invoke only this Court's diversity jurisdiction. This Court is therefore under duty to apply the law of Missouri to the claims alleged in plaintiffs' complaint. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It should be kept in mind that plaintiffs do not even attempt to allege a Section 1983 action.

Defendants state the following three State law grounds in support of their motion for summary judgment: (1) the doctrine of official immunity protects each defendant from liability; (2) Section 210.135, R.S.Mo. (1978) immunizes the defendants from liability, and (3) the plaintiffs' complaint does not state a claim upon which relief can be granted because, under applicable Missouri law, the defendants, as officials and employees of the State of Missouri, owed no specific duty to plaintiffs.

The first two State law grounds raise defenses of immunity; the third ground presents the question of whether, under Missouri tort law, a cause of action has been stated by the allegations of the complaint. Because we conclude that no cause of action has been stated under Missouri law, we need not and therefore do not reach the first two grounds asserted in support of defendants' motion for summary judgment.

## IV. *The Missouri Child Abuse Statute*

■ The current child abuse statute in Missouri, §§ 210.110–210.160, V.A.M.S. (1981 Supp.), is designed to encourage the reporting of suspected cases of child abuse to the Missouri Division of Family Services.

*See generally,* Krause, *Child Abuse and Neglect Reporting Legislation In Missouri,* 42 Mo.L.Rev. 207 (1977). It is also designed to fulfill "the promise of case-finding legislation ... that when a case is found, something will be done about it." Paulsen, *The Legal Framework For Child Protection,* 66 Colum.L.Rev. 679, 716 (1966).

The first objective is accomplished by creation of a statutory duty in a class of professional persons and others "with responsibility for the care of children" to report known or suspected cases of child abuse. § 210.115(1). All other persons are permitted to make reports under § 210.115(4).

The second objective is furthered by requiring the local D. F. S. office to investigate reported cases of child abuse and, if necessary, provide "protective services" or contact the appropriate law enforcement authority. Section 210.145, V.A.M.S. (1981 Supp.) provides:

210.145. Division of family services to receive reports, duties of division after receipt—rules by division authorized

1. The division shall establish and maintain a telephone service operating at all times, capable of receiving reports made pursuant to sections 210.110 to 210.-165. This service shall receive reports over a single, state-wide toll free number.

2. The division shall maintain a central registry capable of receiving and maintaining reports received pursuant to sections 210.110 to 210.165, in a manner that facilitates rapid access and recall of the information reported, and of subsequent investigations and other relevant information.

3. Upon receipt of a report pursuant to sections 210.110 to 210.165, the division shall immediately communicate such report to its appropriate local office, communication to be by telephone after a check has been made with the central registry to determine whether previous reports have been made regarding actual or suspected abuse or neglect of the subject child, of his siblings, and the perpetrator, and relevant dispositional information regarding such previous reports. Such relevant information as may be contained in the central registry shall be also reported to the local office of the division.

4. The local office of the division shall cause a thorough investigation to be made immediately or no later than within twenty-four hours of receipt of the report from the division, the primary purpose of such investigation being the protection of the child. The investigation shall include but not be limited to the nature, extent, and cause of the abuse or neglect; the identity and age of the person responsible therefor; the names and conditions of other children in the home, if any; the home environment and the relationship of the subject child to the parents or other persons responsible for his care; and other pertinent data.

5. Protective social services shall be provided by the local office of the division to the subject child and to others in the home to prevent further abuse or neglect, to safeguard their health and welfare, and to help preserve and stabilize the family whenever possible. The juvenile court shall cooperate with the division in providing such services.

6. Multidisciplinary services shall be utilized whenever possible in making the investigation and in providing protective social services, including the services of the juvenile officer, the juvenile court, and other agencies, both public and private.

7. As a result of its investigation, the local office of the division shall report a child's injuries or disabilities from abuse or neglect to the juvenile officer, and may make such report to the appropriate law enforcement authority.

8. Within thirty days of an oral report of abuse or neglect from the division, the local office shall file a written report with the central registry on forms supplied by the division for that purpose. The report shall contain the facts ascertained, a description of the services offered and accepted, those responsible for the care of the subject child, and other relevant dispositional information.

The written report shall be updated at regular intervals for as long as the subject child and/or his family are receiving services.

9. The division shall promulgate rules and regulations governing the operation of the central registry, except as otherwise provided for in sections 210.110 to 210.165.

■ The question presented by the third ground alleged in support of defendants' motion for summary judgment is whether the alleged failure of D. F. S. officials to comply with the statutory duty created by § 210.145 R.S.Mo., in particular the duty to "cause a thorough investigation to be made" of reported child abuse, states a cause of action in favor of plaintiffs under applicable Missouri tort law. Under Missouri law, "Before an act is said to be negligent, there must exist a duty to the individual complaining." *Dix v. Motor Market, Inc.*, 540 S.W.2d 927, 932 (Mo.App. 1976), *citing Vanacek v. St. Louis Public Service Co.*, 358 S.W.2d 808, 810 (Mo. banc 1962). Whether a duty was owed by these defendants to these plaintiffs under the facts of this case depends upon whether, under applicable Missouri law, the Child Abuse reporting statute must be found to have created only a public duty and not a duty to individuals, and whether, under the allegations of plaintiffs' complaint, plaintiffs could be said to fall within some exception to the general applicable rule in that D. F. S. officials, by their actions, could be said to have established a specific duty to these plaintiffs.

## V. *The Public Duty Rule*

### A.

*Parker v. Sherman*, 456 S.W.2d 577 (Mo. 1970) is the seminal Missouri case to recognize and follow the public duty rule. In *Parker,* a Douglas County taxpayer sued the sheriff of Douglas County alleging that the sheriff knew or should have known that during four days in August, 1968 gambling activities were being conducted at the Douglas County Fair and participated in by minors; the sheriff was derelict in his duties for not prohibiting those activities, and such dereliction did "harm to the moral tone of the community" and substantial damage to plaintiff's investments in Douglas County. The Supreme Court of Missouri held that the petition was properly dismissed by the trial court for failure to state a cause of action under Missouri tort law.

The Missouri court noted that "Section 563.370, RSMo 1959, V.A.M.S., declares it to be a felony for anyone to keep any gambling device and to induce or entice others to play at any such game or device," but nevertheless concluded, that "this statute does not create an individual cause of action.... Its passage was for the benefit of the general public." 456 S.W.2d at 578.

The court also discussed at length the sheriff's duty as conservator of the peace under § 57.100, R.S.Mo.1959, V.A.M.S., which provides: "Every sheriff shall quell and suppress assaults and batteries, riots, routs, affrays and insurrections; shall apprehend and commit to jail all felons and traitors, and execute all process directed to him by legal authority, including writs of replevin, attachments and final process issued by magistrates." That statute also was held not to create a private cause of action in favor of individuals.

The Supreme Court of Missouri in *Parker* cited and relied upon the decision of the United States Supreme Court in *South v. Maryland,* 18 How. 396, 59 U.S. 396, 15 L.Ed. 433 (1856). In *South,* one Pottle was kidnapped for four days by "certain evil-disposed persons ... until he paid them the sum of $2,500 for his enlargement." Despite Pottle's pleas, the sheriff refused or neglected to protect him. Pottle sued the sheriff and his sureties in the name of the State of Maryland, on the sheriff's bond faithfully to perform his office. The Supreme Court reversed a judgment upon a jury verdict for plaintiff in the Circuit Court of the United States for the District of Maryland. Justice Grier stated for the Court:

It is an undisputed principle of the common law, that for a breach of a public duty, an officer is punishable by indict-

ment; but where he acts ministerially, *and is bound to render certain services to individuals*, for a compensation or fee in salary, he is liable for acts of misfeasance or non-feasance to the party who is injured by them. [59 U.S. [18 How] at 402–03] (emphasis added)

*Parker* also discussed three state court cases which followed and applied the rule stated in *South v. Maryland*. Two of those cases are significant in the determination of this case and merit further discussion, subsection B, *infra*, as they articulate and apply the public duty rule applied by the Supreme Court of Missouri in *Parker* to factual circumstances not dissimilar to those alleged by plaintiffs in this case.

### B.

In *Leger v. Kelley*, 142 Conn. 585, 116 A.2d 429 (Conn.1955), the first State court case cited with approval by the Supreme Court of Missouri in *Parker*, defendant commissioner of motor vehicles granted registration of an automobile in violation of a statute prohibiting the registration of automobiles not equipped with safety glass. That automobile collided with another and plaintiff, a passenger in the improperly registered automobile, was injured by fragments of the windshield. The Supreme Court of Errors of Connecticut stated the rule of *South v. Maryland* as follows:

It is well settled that a public official is liable to an individual for his failure to perform a *ministerial duty* imposed upon him by statute *only if the statute creates a duty to the individual*. [116 A.2d at 431] (emphasis added) (citing *South v. Maryland*, 59 U.S. [18 How], at 402–03).

The court also quoted and relied upon the following language from Section 300 of Cooley on Torts:

The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecu-

tion. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. 2 Cooley, *Torts* (4th Ed.) p. 385 [*Id.* 116 A.2d at 432]

The Connecticut court then formulated the following test to determine whether a statute creates a private cause of action in favor of individuals:

From the foregoing and other cases, it appears that the test is this: If the duty imposed upon the public official by the statute is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the statute is one which imposes upon the official a duty to the individual, and if the official is negligent in the performance of that duty he is liable to the individual. [*Id.*]

Applying that test to the registration statute, the court concluded that, "The purpose of § 2447 was to protect from injury not any one person but such members of the general public as ride in automobiles." *Id.*

In *Jacobson v. McMillan*, 64 Idaho 351, 132 P.2d 773 (Idaho, 1943), the second State court case cited with approval by the Supreme Court of Missouri in *Parker*, a wife, being apprised of her husband's intention to shoot her, took refuge in the home of a friend. The friend was assaulted by the husband. Criminal charges were filed. The husband was arrested by the sheriff and taken into custody. However, no trial was held and no bond furnished for his release as it was discovered that the husband was suffering from a mental and physical disease known as "paresis" and consequently rendered "dangerously insane." On order of the sheriff, the husband was transferred to a state hospital for observation in care of its medical superintendent. Allegedly through his negligence, the husband was permitted to abscond; and, although notified that the husband was at large and intent upon shooting his wife, the sheriff made no attempt to apprehend him. The husband proceeded to his wife's residence possessed of a shotgun and fired sev-

eral shots in her direction, injuring plaintiff. The Supreme Court of Idaho affirmed the judgment of the district court dismissing the complaint.

The Supreme Court of Idaho, in reliance upon *South v. Maryland* and Section 300 of Cooley on Torts, concluded that for "violation of his duty to keep a prisoner charged with a crime, [the sheriff] is answerable to the public . . . . That right, however, does not inure to individuals." 132 P.2d at 777. (citations omitted).[3]

Regarding liability of the medical superintendent, the court concluded that the agreement to return the husband to the custody of the sheriff after completion of the study was "made for the benefit primarily of the prisoner. It was not an agreement between the officers and appellant." 132 P.2d at 778.

■ These cases, cited and discussed with approval in *Parker*, clearly recognize and apply an established state court rule of decision, that a statute which creates a duty to the public, and to individuals only as members of the public, will not support a private cause of action in favor of individuals.

*Crouch v. Hall*, 406 N.E.2d 303, 304 (Ind. App.1980) was decided shortly after the Supreme Court of Missouri decided *Parker*. The Indiana court recognized and applied the same rule of decision which the Supreme Court of Missouri applied in *Parker*. The rationale of both cases was based on *South v. Maryland* and Section 300 of Cooley on Torts. Because we are satisfied that a Missouri court would follow and apply the public duty rule in the same manner as the Indiana court applied that rule in *Crouch*, it is appropriate that the Indiana case be discussed in some detail.

In *Crouch*, plaintiff sued three police officers for failing to properly investigate the rape of a third person and to apprehend the rapist, who, within one week, raped and murdered plaintiff's daughter. The first rape victim alleged that those officers were unwilling to interview her or pursue her many leads as to the location and identity of the rapist, in spite of her having warned them of the danger to women in the area. The Court of Appeals of Indiana affirmed a grant of summary judgment in favor of defendants. After finding a rape investigation to be a "discretionary function," the court then stated an alternative ground, which it characterized as "strictly a matter of tort law, although it has been intermixed with the discretionary/ministerial dichotomy in Indiana:"

It is fundamental in tort law that for liability to attach, there must be a duty owed to a plaintiff by a defendant. [citation omitted]

In our research we have found it overwhelmingly held that liability to an individual for damages will not lie where the officer or the public body owes a duty to the general public as a whole, but it is not shown that the officer or public body owes a specific duty or has a special relationship to the individual. *Massengill v. Yuma County*, (1969) 104 Ariz. 518, 456 P.2d 376. [406 N.E.2d at 304] (other citations omitted)

*Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969), 41 A.L.R.3d 692 (1972), cited and relied upon by the Indiana court in *Crouch*, is another case in which a state court applied the public duty rule of decision to factual circumstances not unlike those alleged in plaintiffs' complaint in this case. The Arizona case should be given appropriate consideration for the same reason as *Crouch*.

**3.** The scope of the public duty rule applied by the Supreme Court of Idaho in *Jacobson* is underscored by the fact that Justice Givens, dissenting in part, would have reversed the judgment of the lower court as to the sheriff and his surety because:

Mrs. O'Connor was not a stranger to the proceedings whereby O'Connor was placed in

the custody of respondent sheriff. She was not just any one of the general body politic in Kootenai County or the state of Idaho. She had directly appealed, through Hess, to the chief law officer of the county, for protection by O'Connor's arrest. [132 P.2d at 780]

In *Massengill*, plaintiffs brought a wrongful death and personal injury action against a sheriff and his deputy following a head-on collision resulting in the deaths of five persons and total disability of a sixth. The petition alleged that two drivers drove their automobiles from a parking lot used by patrons of two drinking establishments in a reckless manner at a high rate of speed and proceeded side by side down the highway. The drivers of the cars passed the patrol car of the deputy sheriff stationed in the parking lot, who then proceeded to follow behind them until the time of the accident, but made no effort to apprehend them. The patrol car was equipped with an overhead flashing red light operated by a switch inside the car, but the deputy sheriff did not activate the light. The Arizona Supreme Court en Banc vacated the decision of the Court of Appeals and affirmed the judgment of the Superior Court dismissing the complaints.

In neither *Crouch* nor *Massengill* was a private cause of action in favor of individuals found to exist despite the fact that in each of those cases, performance of the public duty involved would have, and should have, inured to the benefit of individuals. *Crouch* and *Massengill* are consistent with the reasoning and result reached in *Parker* and the cases cited and relied upon therein. Under the rule of decision recognized and applied in *Parker*, this Court must conclude that the Missouri Child Abuse statute created only a duty to the public and not to individuals, and therefore cannot be said to support a cause of action in favor of individuals.[4] That rule of decision is applicable to this case unless plaintiffs can establish that the rule should not

be applied to them. We shall examine plaintiffs' contention in that regard in the next section of this memorandum opinion.

## VI.

In paragraph five of plaintiffs' suggestions opposing defendants' motion for summary judgment, plaintiffs state as follows:

V.A.M.S. Section 210.145 delineates that the duty is to conduct a *thorough* investigation wherever there is a report of child abuse. Certainly the statute was enacted for the general benefit of the public. However, a specific duty to investigate arises once a hot line phone call or report is transmitted to the Division of Family Services. The specific duty is triggered for the benefit of the named victims, who in this case were the Nelson children. Certainly, the establishment of a hot line reporting system creates a specific duty to investigate because members of the public rely on this system and forebear from making further reports to other potential investigative agencies. This reliance on the DFS hot line reporting system naturally would work to the detriment of the child victims if there were no specific duty to act upon hot line phone calls. Thus, plaintiffs agree that the general statute 210.145 was enacted for the benefit of the general public. But once a specific hot line phone call has been made naming the Nelson children, there arises a specific duty on the part of each state defendant who had knowledge of that Nelson hot line phone call to investigate.

Plaintiffs concede that the Missouri Child Abuse statute creates a public duty, but argue that a specific duty to these plaintiffs

---

4. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) established that a federal diversity court is under duty to apply the common law rule of decision applicable in the courts of the forum state. *Parker v. Lowery*, 446 S.W.2d 593 (Mo.1969), a companion case arising from the same facts as *Parker v. Sherman*, 456 S.W.2d 577 (Mo.1970), provides important guidance in applying the Missouri rule. In that case, plaintiffs, under the same criminal statute at issue in *Parker v. Sherman*, brought a civil action against the owners and

operators of the Douglas County Fair. The Supreme Court of Missouri affirmed a judgment of dismissal. In that case, the Supreme Court of Missouri explained that, although the courts of Missouri will "expand accepted common-law doctrine where necessary ... [w]e do not invent new causes of action which are not justified by recognized legal principles." [446 S.W.2d at 596] Neither is this Court, sitting in diversity jurisdiction, free to invent a cause of action that has not been recognized under legal principles established in Missouri.

may be found to exist under the allegations stated in the complaint. The "specific duty to investigate" is said to arise "once a hot line phone call or report is transmitted to the Division of Family Services," and "is triggered for the benefit of the named victims, who in this case were the Nelson children." Clearly, plaintiffs are correct in asserting that once a report has been made, a duty arises to investigate. But the public duty to investigate imposed by the statute does not suffice to establish a specific duty to these plaintiffs as individuals, the breach of which would, under applicable Missouri law, entitle plaintiffs to a private cause of action against the defendant officials and employees of the State of Missouri.

Plaintiffs further argue that "the establishment of a hot line reporting system creates a specific duty to investigate because members of the public rely on this system and forbear from making further reports to other potential investigative agencies." Neither the cases cited by plaintiffs [5] nor those already discussed support plaintiffs' argument that reliance upon public officials to perform their public duty will transform a duty to the public into a duty to individuals. *Vonner v. State*, 273 So.2d 252, 255 (La.1973), relied upon by plaintiffs, does not support their argument. In that case the Supreme Court of Louisiana merely held that, "When the department obtains or accepts the custody of children, it becomes directly responsible for their care and well-being. It cannot insulate itself from this responsibility by contracting it out to others to fulfill." *Elton v. County of Orange*, 3 Cal.App.3d 1053, 84 Cal.Rptr. 27 (1970) held that a cause of action was stated against the county for negligently placing a dependent child in a foster home, where she

was beaten. *Commonwealth v. Coyle*, 160 Pa. 36, 28 A. 634, 635 (1894) held that, "It is culpable negligence in an officer representing the district charged with their support to bind an infant pauper to service with a person whose parsimony and cruelty in the treatment of poor children committed to his care were well known in the neighborhood in which he lived." In each of those cases cited by plaintiffs, the element of specific duty to individuals was clearly established by facts and circumstances not present in this case.

We find and conclude that the rule of decision recognized and applied in *Parker* must be applied to this case and that under that rule of decision, the applicable provisions of the Missouri Child Abuse statute cannot be said to support a private cause of action in favor of individuals.

■ The Court has not overlooked the allegations in the complaint that defendants "willfully refused" to perform the duties mandated by the Missouri Child Abuse statute and demonstrated "complete indifference to or conscious disregard for the safety of others." Those allegations do not state a cause of action under Missouri law.

*Leger v. Kelley*, 142 Conn. 585, 116 A.2d 429 (Conn.1955), a case cited with approval in *Parker* and discussed herein at length, affirmed a decision of the Superior Court of Connecticut sustaining a demurrer to the complaint, *Leger v. Kelley*, 19 Conn.Sup. 167, 110 A.2d 635 (Conn.Super.Ct.1954), aff'd, 142 Conn. 585, 116 A.2d 429 (Conn. 1955). The Superior Court had concluded, in an opinion quoting Section 300 of Cooley on Torts, that:

> The law seems to be clear that if the duty discharged is a public duty and not a duty which the individuals owe to any

5. In their suggestions opposing state defendants' motion for summary judgment, plaintiffs cite various portions of the record to demonstrate that material facts are in issue. However, those citations appear in a portion of the suggestions directed to the issue of official immunity, which this Court does not reach. Plaintiffs argue that "the petition in this case was drafted to comply with *Jackson v. Wilson*." [581 S.W.2d 39 (Mo.App.1979) ]. That argument, however, is made in the context of

refuting defendants' official and statutory immunity arguments and has no bearing on the issue of duty. *Jackson* is simply not a public duty case. Neither is *State ex rel. Funk v. Turner*, 328 Mo. 604, 42 S.W.2d 594, 598 (1931), which states the Missouri rule regarding the distinction between ministerial and discretionary functions. That distinction is not pertinent in a case where the duty involved is owed only to the public and not to individuals.

particular person, then by their negligence *or wanton or wilful omission* in the performance of this public duty, the officers are not liable except to the state. *People of State of Illinois for use of Trust Co. of Chicago v. Maryland Casualty Co.,* 7 Cir. 132 F.2d 850, 852. [110 A.2d at 638] (emphasis added)

Both the Superior Court of Connecticut, 110 A.2d at 638, and the Supreme Court of Errors of Connecticut, 116 A.2d at 431, 432, cited and relied in *Leger* upon the Seventh Circuit case of *People v. Maryland Casualty Co.,* 132 F.2d 850 (7th Cir. 1942). In that case, plaintiffs sued various state officials for "carelessly, negligently, wantonly and wilfully" permitting the water supply of the Manteno State Hospital to become dangerously contaminated with typhoid bacilli which allegedly caused an outbreak of typhoid fever resulting in the deaths of four persons and injury to numerous others. The first question presented to the court was:

1. Whether said officers are liable for their alleged negligent, *wanton and wilful* failure to furnish safe drinking water to patients in the Manteno State Hospital and to others on the premises; [132 F.2d, at 851] (emphasis added)

Judge Minton, writing for the Court, first quoted Section 300 of Cooley on Torts and then Section 301 of that same volume to illustrate the application to that case of the rule stated in Section 300. He concluded, in language almost identical to that quoted from the opinion of the Superior Court of Connecticut in *Leger, supra,* that application of the rationale of Section 300 of Cooley on Torts required the court to dismiss the complaints: "Since the officers in this case were discharging a public duty and not a duty they owed the individuals in the case at bar, there can be no liability on the part of the officers to such parties. There being no duty there can be no liability." 132 F.2d, at 853.

Finally, it should be noted that the declaration in *South v. Maryland* alleged that the sheriff, although present and able to do so, "did then and there neglect *and refuse* to protect and defend the said Jonathan from the said unlawful conduct and threatened violence of the said evil-disposed persons, and to preserve and keep the peace of the State of Maryland . . . ." 59 U.S. (18 How), at 399, 401 (emphasis added). Nevertheless, the court concluded that the declaration had set forth no sufficient cause of action.

We have already concluded that the Missouri Child Abuse statute created only a public duty and not a duty to individuals. We are satisfied that the rule of decision recognized and applied in *Parker* permits of no exception for suits against public officials who allegedly "willfully" fail to perform duties owed only to the public.

## VII.

Our review of the file after this case was assigned to the undersigned judge following Judge Bartlett's recusal, reveals that the question of whether plaintiffs actually intended to pursue their alleged action against defendants Audrey Nelson, Theodore Gulley and the as yet unidentified "John Doe" defendants was the substance of considerable discussion when the case pended before Judge Bartlett. This Court is satisfied counsel recognize that this Court's order granting summary judgment on behalf of the moving defendants is not an appealable order under Section 1291 of Title 28, United States Code, *see Premier Industrial Corp. v. McGuire,* 423 F.2d 1198, 1199 (5th Cir. 1970) (per curiam).

It is thus clear that any appeal of this Court's interlocutory order would necessarily be delayed until after final disposition of plaintiffs' cause of action alleged against the remaining defendants who are not parties to the motion for summary judgment. Counsel are advised that this Court will not direct entry of a final judgment under Rule 54(b) or state in writing that an interlocutory appeal may be taken under Section 1292(b) for the reason that the certification of an appeal of our order granting the motion for summary judgment filed on behalf of the officials and employees of the State of Missouri would not materially advance the ultimate termination of all of the pending litigation.

The Court's examination of the file suggests that plaintiffs, for quite practical reasons, may not wish to pursue any action they may have against the defendants who are not parties to the pending motion for summary judgment. Plaintiffs' dismissal of their action against defendants Audrey Nelson, Theodore Gulley and the named but as yet unidentified "John Doe" defendants would, of course, make this Court's ruling on the pending motion for summary judgment an appealable order. *See Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 479 (7th Cir. 1980).

Counsel are therefore advised that if plaintiffs conclude under the practical circumstances mentioned that a motion for dismissal against the nonmoving defendants should be filed pursuant to Rule 41(a), Fed. R.Civ.P., the Court now indicates that it would grant such a motion and thereafter direct entry of a final judgment so that this Court's interlocutory order granting summary judgment and the judgment for the defendants entered thereunder would be subject to immediate appeal. An appropriate order will therefore be entered affording plaintiffs time to consider whether they may wish to file a Rule 41(a) motion to dismiss their case against the nonmoving defendants.

### VIII.

For the reasons stated, it is

ORDERED (1) that plaintiffs' motion for summary judgment and for sanctions should be and the same is hereby denied. It is further

ORDERED (2) that summary judgment should be and is hereby granted in favor of defendants Freeman, Lewis, Keatings, White and Donaldson under Rule 56(b), Fed.R.Civ.P. It is further

ORDERED (3) that defendants' motion for leave to file their October 26, 1981 answer out of time should be and is hereby granted *nunc pro tunc.* It is further

ORDERED (4) that within ten (10) days of this order plaintiffs may either file a Rule 41(a) motion for dismissal of the non-moving defendants or, in the alternative, advise the Court that such motion will not be filed. It is further

ORDERED (5) that the Clerk shall not enter a separate judgment pursuant to Rule 58, Fed.R.Civ.P. pending further order of the Court. In the event plaintiffs elect not to file a Rule 41(a) motion to dismiss the nonmoving defendants, the judgment to be entered must necessarily be an interlocutory judgment and therefore not subject to immediate appeal.