Mary Lou KUHN, Jeffrey Daniel
Kuhn, and Daniel Patrick
Kuhn, Appellants,

v.

BUDGET RENT–A–CAR OF MISSOURI,
INC., Respondent.

No. WD 47721.

Missouri Court of Appeals,
Western District.

March 29, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1994.

Application to Transfer Denied
June 21, 1994.

Douglas M. Greenwald, Frank D. Manghini, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for appellants.

J.C. Hambrick Jr., David B. Sexton, Schulz, Bender, Maher & Blair, Kansas City, KS, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Mary Lou Kuhn, Jeffrey Daniel Kuhn, and Daniel Patrick Kuhn appeal the summary judgment entered for Budget Rent–A–Car of Missouri, Inc., (Budget) in a wrongful death action in which appellants alleged that Budget negligently allowed or failed to prevent an "off duty" intoxicated Budget employee from driving a vehicle owned and/or operated by Budget off premises resulting in the death of Danny L. Kuhn, Mary Lou Kuhn's husband and Jeffrey and Daniel Kuhn's father. The appellants contend that the court erred in granting summary judgment because gen-uine issues of material fact exist as to whether Budget acted negligently in allowing or not preventing an intoxicated off-duty employee to operate a Budget shuttle bus on public highways, thereby causing the death of Danny L. Kuhn, or whether Budget expressly or impliedly permitted or entrusted control of the vehicle to the intoxicated off-duty employee. The judgment is reversed, the case is remanded for further proceedings consistent with this opinion.

## Facts

Testimonial evidence in depositions and documents obtained during discovery disclose that Kent Wright, an employee of Budget but not assigned to the Budget KCI Airport facility, was permitted onto the KCI facility by Michael Jones, an on duty Budget employee, the morning of January 1, 1991. Budget company rules require that the Budget airport rental facility be locked and the facility be closed to the public between 1:00 a.m. and 5:00 a.m. Mr. Jones unlocked the gate of the facility to permit Mr. Wright's entrance onto the premises.

Mr. Jones was employed by Budget as a service agent. His duties included providing night security at the Budget airport facility. His instructions included not permitting anyone onto the premises after the facility was locked at 1:00 a.m. until it opened again at 5:00 a.m. each morning. Mr. Jones was in charge of the Budget airport facility after counter representatives departed the location at the conclusion of their work shift. When Mr. Jones permitted Mr. Wright to enter the facility the morning of January 1, 1991, he was the only Budget employee on duty.

Mr. Wright arrived at the Budget Airport facility between 2:30 a.m. and 3:00 a.m. the morning of January 1, 1991. Mr. Jones knew Mr. Wright because Mr. Wright was also employed by Budget but at a different Budget facility. Mr. Wright was Mr. Jones' predecessor as the night agent/security person at the KCI Budget facility and while employed at the facility, he had been a shuttle bus driver for a time. An eight- to ten-foot fence surrounded the facility, and access was effectively limited to persons entering the facility through the gate unlocked by Mr.

Jones. Mr. Wright was not authorized to be on the premises.

After the gate was unlocked, Mr. Wright drove his vehicle onto the Budget facility and parked it in the employees' parking area. Mr. Wright informed Mr. Jones that he had been drinking intoxicants much of the night. Mr. Jones smelled the odor of alcohol on Mr. Wright's breath. Both men began drinking alcoholic beverages on the Budget premises, and Mr. Jones observed Mr. Wright stumbling and weaving while walking. Mr. Jones became so intoxicated that he was unable to conclude his duties and passed into alcoholic induced unconsciousness while seated in one of the Budget vehicles located on the Budget facility.

At approximately 4:50 a.m. the morning of January 1, 1991, Lyanna Osborne, manager of the Budget facility, arrived to commence her responsibilities for the day. She discovered Mr. Jones asleep in a Budget vehicle that had been parked near the entrance gate with its lights on. She also observed Mr. Wright stumbling, barely able to walk. She concluded that both men were intoxicated. She claims to have told both men that they were fired and to leave the facility. However, Mr. Jones testified during his deposition that Ms. Osborne told him he was fired after she was informed of the vehicular accident, either before she went to the accident scene, or after she returned from the accident scene where Danny L. Kuhn had been killed by the collision of the Budget shuttle operated by Mr. Wright and his vehicle.[1]

After Ms. Osborne observed Mr. Jones and Mr. Wright on the Budget facility, neither of the men departed the facility. They continued walking in and out of the Budget office. Ms. Osborne did not summon law enforcement officers or other persons employed by Budget[2] to remove Mr. Jones and Mr. Wright. Law Enforcement protection and services for the airport are provided by the Kansas City, Missouri, aviation safety department, and the Budget facility is located on airport property. Airport security personnel were capable of responding to a phone call seeking their presence at the Budget facility within approximately two minutes. The Aviation Safety Department had previously received and responded to requests for assistance from rental car agencies located on airport property regarding intoxicated individuals. The airport safety department then had four officers (and a dispatcher) on duty who could have responded to a request for assistance from the Budget facility the morning of January 1, 1991.

Ms. Osborne, aware that Mr. Jones had consumed intoxicants and was intoxicated, directed him to remain at the facility and to assist her. At approximately 5:10 a.m., she asked Mr. Jones to stay at the facility to assist her until the scheduled Budget shuttle bus driver appeared for work. She directed Mr. Jones to drive a customer from the Budget facility to the airport. A customer later telephoned the Budget facility and complained that Mr. Jones was "too drunk to be driving." Mr. Jones testified during his deposition that he was directed to drive to the airport from the Budget facility at least twice the morning of January 1, 1991, to transport customers. Additionally, he checked in vehicles returned to Budget by customers and parked them while he was in an intoxicated state.

After Ms. Osborne received the telephone complaint about Mr. Jones driving while intoxicated, she drove another customer to the airport and left Mr. Jones in charge of the Budget facility. When she departed the facility to drive the customer to the airport, she observed both Mr. Jones and Mr. Wright in intoxicated states and present on the Budget property. Before departing the premises, Ms. Osborne did not lock the gate, remove the keys from the ignitions of other Budget vehicles and shuttle busses on the lot, or otherwise secure the vehicles. Neither did Ms. Osborne telephone a supervisor, air-

---

1. Mr. Wright could remember very little after the two had commenced drinking together.

2. Ms. Osborne, in a statement taken by a Budget claim manager on January 3, 1991, stated that she called "Mark," a Budget employee, and told him the problem with the two drunks. She said he had just gotten home and did not want to come up so she said, "Don't worry about it." In Ms. Osborne's deposition on July 21, 1992, she stated that she did not call anyone.

port security, police, or anyone else to seek assistance or to remove Mr. Jones and Mr. Wright from the facility.

Ms. Osborne returned to the Budget facility after transporting the customer to the airport. She observed Mr. Jones at the counter. She observed Mr. Wright's vehicle still within the Budget compound, but she did not observe him.

Ms. Osborne then observed the Budget shuttle bus departing the Budget facility, and she claims that she assumed the scheduled shuttle driver had arrived and was driving the bus. Approximately one minute after the bus departed the premises, Ms. Osborne received a telephone call from the scheduled bus driver who advised her that he would not be reporting for work that morning.

William D. Wilson, Jr., an airport security officer, testified during his deposition that he spoke with Ms. Osborne the morning of January 1, 1991, and she told him that she knew Mr. Wright was driving the Budget bus when she observed the Budget shuttle bus leaving the facility. Mr. Wilson also testified that Ms. Osborne told him she knew Mr. Wright was intoxicated when she observed the bus departing the facility. Mr. Wilson stated that when he asked Ms. Osborne why she had not telephoned airport security for assistance when she observed Mr. Wright driving the bus from the facility, Ms. Osborne stated that she had not wanted to cause trouble for Mr. Wright, knowing that he was intoxicated and believing that he would return the bus.

Cecilia Roe is also an airport security officer. Ms. Roe testified in her deposition that Ms. Osborne spoke to her by telephone the morning of January 1, 1991, and informed her of the accident. Ms. Roe stated that Ms. Osborne related "that she was aware that there was a Budget bus out; that she had an intoxicated driver, Kent Wright, take off in the bus." Ms. Roe testified that Ms. Osborne told her she saw Mr. Wright depart the parking lot and that she hoped he would return and not get into trouble. Ms. Roe stated Ms. Osborne acknowledged to her that she had not called airport security to inform that Mr. Wright was intoxicated and driving a Budget vehicle off the Budget facility.

Shortly before 6:00 a.m., January 1, 1991, Mr. Wright drove the Budget bus from the Budget airport facility onto the Mexico City Avenue exit ramp of Interstate I–29 and collided with the vehicle driven by Danny L. Kuhn in a head-on collision. The impact was so severe that it knocked the vehicle driven by Mr. Kuhn off the ramp and down a grass embankment. Mr. Kuhn died as a result of the injuries sustained in the collision with the Budget bus. The Aviation Safety Department was notified of the accident at approximately 5:56 a.m. Ms. Osborne was informed of the fatal accident approximately thirty minutes following the collision.

Mary Lou Kuhn, widow of Danny L. Kuhn, and their two minor children, filed the wrongful death action against Mr. Wright and Budget. The petition alleged various acts of negligence, including negligently entrusting and permitting a Budget vehicle to be operated by an intoxicated person and negligently permitting and creating a dangerous condition on and near the premises owned and/or operated by Budget at the airport facility by permitting Mr. Wright to enter the facility and failing to prevent him from operating a Budget shuttle bus, knowing he was then in an intoxicated state.

Mr. Wright failed to answer the petition and is in default. Budget filed its motion for summary judgment which was heard by the trial court, and judgment was entered granting the motion on February 16, 1993. The motion was sustained without written explanation. The trial court denied appellant's motion for reconsideration. The trial court certified the case for immediate appeal pursuant to Missouri Supreme Court Rule 74.01.

### Preservation for Appeal

Budget contends that the pleadings below submitted the case only on a theory of respondeat superior and authorized use. It contends that the negligence and implied entrustment/permission theories argued on appeal were not pleaded below. This contention is without merit. Counts II and III of the Kuhns' petition adequately allege that Budget was negligent and/or negligently entrusted its vehicle to Mr. Wright. The peti-

tion sets forth facts sufficient for Budget to understand the basis of these contentions.

### Review of Summary Judgment

Appellate courts, when considering appeals from summary judgment, review the record in the light most favorable to the party against whom judgment was entered. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). The party against whom judgment was entered is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993); *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988). Because the propriety of summary judgment is an issue of law, the trial court's judgment is reviewed on the basis of the record submitted[3] and the law, and appellate courts need not defer to the trial court's order granting summary judgment. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). An abundance of caution must be exercised in granting a motion for summary judgment because it is an extreme and drastic remedy that borders on the denial of due process because the opposing party is denied its day in court. *Ross v. American Tel. & Tel. Communications Corp.*, 836 S.W.2d 952, 954 (Mo.App. 1992). Summary judgment is granted only where no genuine issue of material fact exists and judgment is proper as a matter of law. Rule 74.04(c)(3); *Rodgers v. Czamanske*, 862 S.W.2d 453, 457 (Mo.App.1993). A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Finance Corp.*, 854 S.W.2d at 382. "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380. A defending party may establish a right to judgment by showing facts that negate *any one* of the claimant's elements, that the non-movant has not and will not produce sufficient evidence to allow a trier of fact to find the existence of *any one* of the elements, or that there is no genuine dispute as to the existence of *each* of the facts necessary to support a properly-pleaded affirmative defense. *Id.* at 381.

### Negligence

■ To prevail in a negligence action, plaintiffs must establish four elements:[4] 1) that defendant had a legal duty to conform to a certain standard of conduct to protect others against unreasonable risks; 2) that duty was breached; 3) proximate causation existed between the breach/conduct and the resulting injury; and 4) actual damages to the plaintiff. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985). The two elements which Budget claims are negated are duty and proximate cause.

### Duty

"It is generally stated that foreseeability that some injury might result from the act complained of normally serves as the paramount factor in determining the existence of a duty." *Bostic by Bostic v. Bill Dillard Shows, Inc.*, 828 S.W.2d 922, 926–27 (Mo. App.1992). "When deciding if some injury was reasonably foreseeable, whether expressly or implicitly, courts examine what the actor knew or should have known." *Id.* at 927. "The duty arises from circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Gast v. Shell Oil Co.*, 819 S.W.2d 367, 376 (Mo. banc 1991). "[I]t is immaterial that the *precise* manner in which the injury occurred was neither foreseen nor foreseeable." *Pierce v. Platte–Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 776 (Mo. banc 1989) (emphasis in original). "Rather, it is generally measured by 'whether or not a reasonably prudent person would have anticipated danger and provided against it.'" *Hoover's Dairy*, 700 S.W.2d at 431 (citation omitted).

---

**3.** In this case the full depositions were not submitted. Only portions of each were included in the legal file. Sufficient portions were submitted for this court to conclude that summary judgment was improper. However, in the future counsel would be well advised not to omit substantial portions of pertinent records.

**4.** Many cases combine the third and fourth elements into one element.

"Unique among the elements of negligence is duty because the existence of a duty is a question of law." *Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 131 (Mo.App.1993); *see also Burns v. Black & Veatch Architects, Inc.*, 854 S.W.2d 450, 453 (Mo.App.1993) (duty is a matter of law to be determined by the court).

Ms. Osborne and Mr. Jones were employees of Budget, acting as Budget's agents the morning of January 1, 1991. The question is whether either of them should have foreseen the reasonable likelihood that some injury to property or persons would occur as a result of: allowing an unauthorized Budget employee, who formerly drove vehicles from the premises in the performance of his duties and who had knowledge that the ignition keys of the vehicles present were kept in the vehicles, onto the closed premises; allowing the person admitted to the premises to become intoxicated or more intoxicated on the premises; allowing that intoxicated person to roam the premises freely and to have access to Budget vehicles; not having the unauthorized person removed by police or security; not removing ignition keys of the vehicles present nor securing vehicles while the intoxicated person was permitted to roam the premises; knowing that a budget mini-van was probably driven from the premises by the intoxicated off duty employee without endeavoring to obtain the assistance of security personnel to stop the vehicle; and leaving the facility in the sole control of an intoxicated employee with the knowledge that the intoxicated Mr. Wright was still somewhere on the premises.

Budget cites cases holding that "in the absence of special circumstances or special relationships affecting foreseeability, one who leaves a vehicle unlocked with keys in the ignition does not owe a duty to a third parties [sic] arising from accidents involving negligent thieves." *Dix v. Motor Market, Inc.*, 540 S.W.2d 927, 932 (Mo.App.1976); *Lavo v. Medlin*, 705 S.W.2d 562, 564 (Mo.App.1986). These two cases involved private automobiles each parked with the ignition keys inside. One was parked in a parking garage and the other near a bar. The court in *Lavo* explained that "[t]he concept of duty

depends upon the issue of reasonable foreseeability. If it is reasonably foreseeable that an automobile with the keys left in the ignition would be stolen and negligently operated by a thief, then one would have a duty to protect third parties from this conduct." *Id.* at 564 (citations omitted). "Courts looking at special circumstances seek to determine whether an owner's conduct enhanced the probability that his [vehicle] would be stolen and thus increased the hazard to third persons. . . . [A]nd whether the owner is subject to a duty to exercise reasonable care." *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991). Special circumstances were found to justify the imposition of a duty in *Richardson v. Ham*, 44 Cal.2d 772, 285 P.2d 269 (1955) where three inebriates started a 26-ton bulldozer defendants had left unattended and unlocked, and drove it on a journey of destruction. In *Murray v. Wright*, 166 Cal.App.2d 589, 333 P.2d 111 (1958), the court found special circumstances where a used car dealer purposely left keys in the ignition of cars parked on his lot so that anyone could easily start and drive the vehicles. *Hergenrether v. East*, 61 Cal.2d 440, 39 Cal.Rptr. 4, 393 P.2d 164, 167 (1964).

One important factor emphasized in *Richardson* was the enormous potential for harm once a large vehicle such as a bulldozer was put in motion. *Hergenrether*, 393 P.2d at 167. In *Murray*, the facility with which a wrongdoer could appropriate an automobile constituted a virtual invitation to theft. *Hergenrether*, 393 P.2d at 167. "Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons." *Id.* at 166. The *Hergenrether* court, which was cited favorably by the Missouri courts in *Lavo* and *Dix*, listed several special circumstances that persuaded the court to impose a duty:

(1) the vehicle was left in a neighborhood which was frequented by persons [with] little respect for the law and the rights of others; (2) the neighborhood was heavily populated by drunks and near drunks; (3) the vehicle was intended to be left there for a relatively long period of time—from

midafternoon to the following morning—and, of particular importance, it was intended that it would be left for the entire night; and (4) the vehicle was a partially loaded two-ton truck, the safe and proper operation of which was not a matter of common experience, and which was capable of inflicting more serious injury and damage than an ordinary vehicle when not properly controlled.

*Id.* at 167.

In this case Budget parked its vehicles with the ignition key in the ignition of each vehicle; the Budget lot was known to be "populated" by two obviously "drunk" individuals who had operated the shuttle van before; the shuttle was a larger vehicle designed to carry passengers, was more difficult to operate than automobiles, and was potentially capable of inflicting injury and damage to a large number of people.

■ In light of the totality of the facts and special circumstances in this case, as a matter of law, a reasonable, prudent person would have anticipated danger and would have foreseen that failure to act to secure the Budget vehicles present or prevent Mr. Wright's access to the facility or cause Mr. Wright's removal from Budget's premises was likely to result in serious injury or death to third parties. Lack of duty was not a proper ground for summary judgment.

■ Whether Budget breached a duty of reasonable care under the circumstances is a genuine issue upon which reasonable minds could differ. For example, the differences in Ms. Osborne's statement and the statements of others regarding how much time elapsed after Ms. Osborne knew Mr. Wright was driving Budget's shuttle bus and the time she was notified of the accident and what actions she should have taken during that time are matters for the jury to decide. "The role of this court is not to weigh the facts and draw our own conclusions but rather to determine whether genuine issues exist from which reasonable men could draw differing conclusions." *Strickland,* 849 S.W.2d at 134. A jury looking at the totality of the facts could find that Budget breached its duty of reasonable care. The breach of duty element was

not negated and was not a proper ground for summary judgment. That damages occurred appears nearly undisputable. Therefore, causation is the only element remaining upon which summary judgment could have been considered.

### Causation

■ Budget contends that Mr. Wright's actions constituted an independent supervening cause that, as a matter of law, cut off Budget's causal liability. *Lavo,* 705 S.W.2d at 565, instructed that foreseeability was the determining factor as to whether an intervening act of negligence would terminate the vehicle owner's liability. The Missouri Supreme Court in *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852 (Mo. banc 1993), clarified the requirements of proximate cause. "[T]he 'but for' test for causation is applicable in all cases except those involving two independent torts either of which is sufficient in and of itself to cause injury." *Id.* at 862–63. "But for" causation is "merely causation in fact." *Id.* at 862. "Proximate cause requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact." *Callahan,* 863 S.W.2d at 865.

"Missouri, like many other states, has not applied a pure foreseeability test; we have generally said that the injury must be a reasonable and probable consequence of the act or omission of the defendant." *Id.* "This is generally a 'look back' test but, to the extent it requires that the injury be 'natural and probable,' it probably includes a sprinkling of foreseeability." *Id.* It is unnecessary that Budget should have anticipated the exact damage—all that is necessary is that it knew or should have known that there was an appreciable chance some injury would result. *Id.* In Missouri juries are instructed that the defendant's conduct must "directly cause" or "directly contribute to cause" plaintiff's injury. *Id.* at 863 (citing MAI 19.01 [1986 Revision] ). A jury could find that "but for" the breach of Budget's duty of reasonable care, Mr. Wright would not have driven Budget's shuttle the wrong direction onto the highway exit ramp while intoxicated, and Mr. Kuhn would not have been killed. A jury

could find that the totality of Budget's actions and omissions directly contributed to cause Mr. Kuhn's death. The jury could find that Budget, in light of the special circumstances, knew or should have known that a good chance existed that some injury would naturally result. The causation element was not negated.

Negligent Entrustment/Implied permission

 In addition to the negligence issues, there are genuine issues of disputed fact relating to the alternative issue of implied permission to operate the shuttle or its negligent entrustment. Differing evidence was presented as to when Ms. Osborne knew Mr. Wright was the driver of the shuttle. Evidence was presented on the motion to reconsider the order of Summary Judgment that indicated Ms. Osborne took no action because she did not want to get Mr. Wright "in trouble." This evidence is disputed and would be best resolved by a jury.

Ms. Osborne did not take any actions consistent with a belief that the shuttle had been stolen. She did not call security or the·police. She did not make an attempt to contact the shuttle van by radio. The sole indication in the record that Budget believed Mr. Wright stole the shuttle was Budget's request at 9:00 a.m. to allow it to file a stolen vehicle report. This request was several hours after the accident and after other Budget officers were aware of the accident and knew the location of the shuttle van. Evidence presented manifests a dispute regarding the amount of time after Ms. Osborne was aware that Mr. Wright was driving the van and when she actually learned of the accident. Depending on how much time had elapsed, the jury could find that Ms. Osborne's actions during this time demonstrated implied permission or entrustment of the shuttle van to Mr. Wright. The amount of time after Ms. Osborne knew or should have known that Mr. Wright was the driver, and when she was informed of the accident is for the jury to determine and to decide whether her actions, within that time frame, together with her comments to Officer Roe that, "she had an intoxicated driver, Kent Wright, take

off in the van," demonstrated implied entrustment or implied permission.

Because Budget is not entitled to judgment as a matter of law, and because there are material facts still in dispute, the trial court incorrectly granted summary judgment. The order granting summary judgment is reversed, and this case is remanded for proceedings consistent with this opinion.

All concur.