**Norma BRADLEY, as next friend of Kelly Pope, a minor, Appellant,**

v.

**Joel S. RAY, PhD, and Donna Strnad, defendant ad litem and legal representative of Bruce N. Strnad, deceased, individually and as partners of partnership d/b/a Columbia Psychological Associates, Respondents.**

**No. WD 49952.**

Missouri Court of Appeals, Western District.

June 6, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

Danieal H. Miller, Columbia, for appellant.

Joseph H. Mueller, St. Louis, for respondents.

Before FENNER, C.J., P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Plaintiff-appellant, as next friend of Kelly Pope, a minor, appeals the trial court's dismissal of the petition against defendant Joel S. Ray, Ph.D. and of Donna Strnad, defendant ad litem for Bruce N. Strnad, Ph.D. Plaintiff contends the Petition states a claim against defendants on the grounds of: (1) aiding and abetting an intentional child abuse tort; (2) common law negligence for failing to warn appropriate officials of suspected child abuse of Kelly; (3) a private cause of action and negligence *per se* based on violation of the Child Abuse Reporting Act, section 210.115, RSMo 1994[1]; and (4) prima facie tort. Plaintiff also appeals the trial court's appointment of Donna Strnad, the widow of defendant Dr. Strnad, as the defendant ad litem. For the reasons set forth below, the trial court's order dismissing plaintiff's claim for breach of a common law duty to warn is reversed. The trial court's dismissal of all remaining counts, as well as its appointment of Donna Strnad as defendant ad litem, are affirmed.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff, as next friend of Kelly Pope, filed this civil cause of action seeking money damages for injuries Kelly allegedly sustained as a result of prolonged abuse by her stepfather Lester Pope. The Petition alleges that Kelly was abused by Mr. Pope from 1980, when she was four years old, until 1989. Specifically, the Petition alleges that Mr. Pope sexually abused and assaulted Kelly through:

> forceful attempts at anal and vaginal intercourse, forced oral sex by and upon her, sodomy, masturbation and ejaculation upon Kelly Pope and into her mouth, fondling and caressing of her to climax, single and multiple digital penetration of her vagina and rectum, forced insertion and use of a vibrator in her vagina, taking nude and sexually explicit photographs of her alone and with other children, and other acts of like nature....

Kelly's mother, Nancy Kopin, became aware of the abuse and allegedly arranged to have Dr. Joel S. Ray and Dr. Bruce N. Strnad render psychiatric services to Mr. Pope. Drs. Ray and Strnad were licensed psychologists with a private practice in Columbia, Missouri. Drs. Ray and Strnad began counseling Mr. Pope in 1988 for the abuse of Kelly, but shortly thereafter terminated the counseling.

The Petition alleges that Drs. Ray and Strnad were aware that Mr. Pope was abusing Kelly, but failed to report it to any law enforcement authorities during the counseling and upon termination of their services as required by the Child Abuse Reporting Act, section 210.115. This Act provides, in pertinent part, that:

> When any ... psychologist, ... has reasonable cause to suspect that a child has been or may be subjected to abuse or neglect or observes a child being subjected to conditions or circumstances which would reasonably result in abuse or neglect, that

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

person shall immediately report or cause a report to be made to the division. . . .

§ 210.115. Plaintiff contends that Kelly continued to be abused by Mr. Pope as a result of defendants' failure to report the abuse.

This appeal involves the dismissal of plaintiff's cause of action against Dr. Ray and Donna Strnad, the defendant ad litem of Dr. Strnad.[2] The Petition specifically alleged claims against Drs. Ray and Strnad under Count I for aiding and abetting an intentional child abuse tort, under Count III for negligent breach of common law duty to warn of abuse, under Count IV for a private cause of action and negligence *per se* based on the Child Abuse Reporting statute, section 210.115, and under Count V for prima facie tort.

Dr. Ray and defendant ad litem Donna Strnad filed motions to dismiss for failure to state a claim upon which relief can be granted. These motions were predicated on the absence of any duty owed to Kelly based on either section 210.115 or the common law. The motions were granted and the actions against Drs. Ray and Strnad were dismissed. Plaintiff appeals the order of dismissal.

Plaintiff also appeals the trial court's appointment of Donna Strnad, Dr. Strnad's widow, as defendant ad litem, contending the appointment was unduly prejudicial because it would raise undue sympathy for Dr. Strnad.

## II. BREACH OF COMMON LAW DUTY TO WARN OF SUSPECTED CHILD ABUSE

■■ We first address the propriety of dismissal of plaintiff's claim against defendants in Count III for negligent breach of a common law duty to warn appropriate authorities of known or suspected abuse of Kelly by her step-father.[3] A Petition seeking damages for actionable negligence must allege ultimate facts which, if proven, show the "(1) existence of a duty on the part of the defendant to protect plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure." *Nappier v. Kincade,* 666 S.W.2d 858, 860 (Mo.App.1984).

Whether a duty exists under the facts alleged in plaintiff's Petition is an issue of first impression in Missouri, but it has been addressed in a large number of other jurisdictions. Plaintiff requests this Court to join the vast majority of other courts to address this issue, and hold that when a psychologist or other professional knows or pursuant to the standards of the profession should have known that a patient presents a serious danger of violence *to a readily identifiable victim,* the psychologist has a common law duty to take such protective actions as may be reasonable under the circumstances *to warn* the intended victim or to communicate the existence of such danger to those likely to warn the victim, which may include notifying appropriate law enforcement authorities.

### A. Recognition of a Duty to Warn in Tarasoff v. Regents of the University of California.

The seminal case imposing a duty to warn under facts similar to those alleged in plaintiff's Petition is *Tarasoff v. Regents of Univ. of Cal.,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). In that case, the plaintiff was killed by a patient of the defendant

---

**2.** Dr. Bruce N. Strnad died before the Petition was filed and his widow, Donna Strnad, was appointed as the defendant ad litem. Plaintiff's Petition also named as defendants Kelly's stepfather Lester Pope and her mother Nancy Kopin.

**3.** Plaintiff also contends that Count III states claims for malpractice and negligent or intentional infliction of emotional distress. Plaintiff's claims for malpractice and negligent infliction of emotional distress have not been properly preserved for appeal. Plaintiff did not cite any authority for or develop an argument which supports these claims. *See Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978) ("If the point is one for which precedent is appropriate and available, it is the obligation of appellant to cite it if he expects to prevail."). Plaintiff also failed to plead facts which state a claim for intentional infliction of emotional distress. Plaintiff did not establish that defendants acted intentionally or recklessly with the desire to inflict severe emotional distress or in deliberate disregard of a high degree of probability that emotional distress will follow. *See Kelly v. Boys' Club of St. Louis, Inc.,* 588 S.W.2d 254, 256 (Mo.App.1979). Thus, the only remaining claim under Count III is based on common law negligence.

therapist two months after the patient confided his intention to kill plaintiff to the therapist. No one warned the plaintiff of the patient's intention to kill her. The issue before the court was whether the therapist, after determining that his patient posed a serious threat of violence, had a duty to warn the foreseeable victim of that danger. *Id.,* 131 Cal.Rptr. at 20, 551 P.2d at 340.

The court held that a duty to warn did exist under California common law, stating:

When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.

*Id.*

In reaching this holding, *Tarasoff* stated that the most important factor in establishing a duty is foreseeability, for a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Id.* at 22, 551 P.2d at 342 (citations omitted). The court then stated that, while the general rule is that liability will not be imposed where the avoidance of foreseeable harm requires the defendant to control the conduct of another person, there is an exception to this rule when the parties are in a "special relationship." *Id.* at 24, 551 P.2d at 344. The "special relationship" exception is stated in Restatement (Second) of Torts § 315, and applies to impose a duty to act when "the defendant stands in some special relationship

to **either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct.**" *Tarasoff,* 131 Cal.Rptr. at 23, 551 P.2d at 343 (emphasis added).[4]

*Tarasoff* found that, while there was no special relationship between plaintiff and the therapist, the special relationship between the patient and the therapist was sufficient to "support affirmative duties for the benefit of third persons." *Id.* In so holding, the court reasoned that "by entering into a doctor-patient relationship the therapist becomes sufficiently involved to assume some responsibility for the safety, not only of the patient himself, but also of any third person whom the doctor knows to be threatened by the patient." *Id.* at 24, 551 P.2d at 344 (citations omitted).

In *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980), the court clarified *Tarasoff* by explaining that the duty recognized therein does not apply to the general public, but only arises when the intended victim is "foreseeable" and "readily identifiable." *Id.* at 76, 614 P.2d at 734. Thus, no affirmative duty to warn exists when a patient has made "nonspecific threats of harm directed at nonspecific victims." *Id.* at 77, 614 P.2d at 735.

**B. *A Majority of Jurisdictions Which Have Considered the Issue Have Imposed a Similar Duty.***

*Tarasoff* has been "widely accepted (and rarely rejected) by courts and legislatures in the United States as a foundation for establishing duties of reasonable care upon psychotherapists to warn, control, and/or protect potential victims of their patients who have expressed violent intentions." Peter F. Lake, *Revisiting Tarasoff,* 58 Alb.L.Rev. 97, 98 (1994). A *Tarasoff*-type duty has been adopted in 23 states, in addition to California, either as a result of judicial decision, legislation, or both.

4. The Restatement (Second) of Torts § 315 (1965), states in relevant part that:
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless:
(a) a special relation exists between the actor and third person which imposes a duty

upon the actor to control the third person's conduct, or
(b) a special relation ... between the actor and the other which gives to the other a right of protection.

### 1. *Judicially Imposing a Duty to Warn or Control.*

The "vast majority of the courts that have considered the issue have accepted the *Tarasoff* analysis." *Currie v. United States,* 644 F.Supp. 1074, 1078 (M.D.N.C.1986), *aff'd,* 836 F.2d 209 (4th Cir.1987). Indeed, our analysis has identified 11 cases which have either adopted the rule set out in *Tarasoff* or have adopted a rule imposing even broader liability, and three states which have indicated an intent to do so. Only a single jurisdiction appears to have rejected the doctrine.

More specifically, three states have adopted the *Tarasoff* rule establishing a common law duty of a psychotherapist to warn readily identifiable victims of the violent intentions of their patients. *See Bardoni v. Kim,* 151 Mich.App. 169, 390 N.W.2d 218 (1986), *cert. denied,* 426 Mich. 863 (1986) (duty to warn readily identifiable victim); *Peck v. Counseling Serv.,* 146 Vt. 61, 499 A.2d 422 (1985) (accord); *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979) (accord) (duty subsequently codified at N.J.Stat.Ann. § 2A:62A–16 (West 1993)).

Two additional states have adopted a rule imposing liability and extended the duty to situations in which "classes of potential victims" are identifiable. *See Almonte v. New York Medical College,* 851 F.Supp. 34, 41 (D.Conn.1994) (class of victims); *Naidu v. Laird,* 539 A.2d 1064, 1073 (Del.1988) (accord) (class includes anyone who could have been injured as a result of an automobile accident with patient where patient had a history of mental illness, including two incidents in which he was involved in automobile accidents while in a psychotic state) (subsequently codified at 16 Del.Code Ann. tit. 16, § 5402 (1994)).[5]

At least four states have extended the *Tarasoff* duty even further. They recognize a duty to any foreseeable victim, even if there has been no specific threat to that victim. *See Hamman v. County of Maricopa,* 161 Ariz. 58, 775 P.2d 1122, 1128 (1989) (imposing a duty to any foreseeable victim who is "within the zone of danger, that is, subject to probable risk of the patient's violent conduct"); *Schuster v. Altenberg,* 144 Wis.2d 223, 424 N.W.2d 159 (1988) (accord); *Currie v. United States,* 644 F.Supp. 1074 (M.D.N.C.1986) (accord); *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb. 1980) (applying Nebraska law—finding a duty to control anyone *foreseeably* endangered by a patient)[6].

At least two other states not only recognize the duty to warn set out in *Tarasoff,* but also extended it to include a duty to take reasonable measures to protect or control the patient. *See, e.g., Littleton v. Good Samaritan Hosp. & Health Center,* 39 Ohio St.3d 86, 529 N.E.2d 449 (1988) (finding a duty to control in an inpatient setting but declining to decide if it extends to an outpatient setting); *Bradley Center, Inc. v. Wessner,* 250 Ga. 199, 296 S.E.2d 693 (1982) (duty to control imposed on mental hospital as to patient within control of hospital).

Lastly, at least three additional states have not imposed a duty based on the facts of the individual cases, such as the lack of a specific threat, but have indicated that they would impose a duty to warn under facts similar to those present in the instant case. *See Morton v. Prescott,* 564 So.2d 913, 916 (Ala.1990) (refusing to find a duty to warn when threat was not to a specific individual but noting that "once these specific threats are verbalized, then the possibility of harm to third persons becomes foreseeable and the psychiatrist's duty arises"); *Leonard v. Latrobe Area Hosp.,* 425 Pa.Super. 540, 625 A.2d 1228 (1993) (construing *Tarasoff* to apply in the case of a specific threat to a specific person and finding no duty in that case because no specific threat); *Eckhardt v. Kirts,* 179 Ill.

**5.** Under 16 Del.Code Ann. tit. 16, § 5402 (1994), duty exists when the "patient has communicated ... an explicit and imminent threat to kill or seriously injure a clearly identified victim or victims, or to commit a specific violent act or to destroy property under circumstances which could easily lead to serious personal injury or death, and the patient has an apparent intent and ability to carry out the threat...."

**6.** This duty was subsequently limited by the Nebraska legislature to any "reasonably identifiable victim or victims." *See* Neb.Rev.Stat. §§ 71–1,206.30, 71–1,336 (1994).

App.3d 863, 128 Ill.Dec. 734, 739, 534 N.E.2d 1339, 1344 (2d Dist.1989), *cert. denied,* 126 Ill.2d 558, 133 Ill.Dec. 667, 541 N.E.2d 1105 (1989) (accord).

In fact, our research has revealed only one court which has expressly rejected the holding of *Tarasoff. Boynton v. Burglass,* 590 So.2d 446, 448–49 (Fla.Dist.Ct.App.1991), reasoned that the nature of the relationship between the patient and the psychotherapist was not sufficient to impose a duty to warn on the psychotherapist. Subsequent to this decision, Florida adopted legislation which permissively allows a psychiatrist to disclose patient communications to the extent necessary to warn potential victims or law enforcement authorities. *See* Fla.Stat.Ann. § 455.2415 (West 1994).

## 2. *Jurisdictions Statutorily Imposing a Duty.*

Numerous jurisdictions have adopted a statutory rule imposing a duty to warn in situations similar to that addressed in *Tarasoff.* The Nebraska statute is representative. It provides that:

(1) No monetary liability and no cause of action shall arise against any psychologist for failing to warn of and protect from a client's or patient's threatened violent behavior or failing to predict and warn of and protect from a client's or patient's violent behavior except when the client or patient has communicated to the psychologist a serious threat of physical violence against a reasonably identifiable victim or victims.

(2) The duty to warn of or to take reasonable precautions to provide protection from violent behavior shall arise only under the limited circumstances specified in subsection (1) of this section. The duty shall be discharged by the psychologist if reasonable efforts are made to communicate the threat to the victim or victims and to a law enforcement agency.

(3) No monetary liability and no cause of action shall arise against any person who is a psychologist for a confidence disclosed to third parties in an effort to discharge a duty arising under subsection (1) of this section in accordance with subsection (2) of this section.

Neb.Rev.Stat. § 71–1,206.30 (1994). Similar statutes have been enacted in 14 other states. The statutes have generally limited this duty to instances in which a patient has communicated a serious threat of physical violence against a readily identifiable victim. *See* Cal. Civ.Code § 43.92 (West 1995); Colo.Rev.Stat. § 13–21–117 (1994); 16 Del.Code Ann. tit. 16, § 5402 (1994); Fla.Stat.Ann. § 455.2415 (West 1994); Idaho Code §§ 6–1902, 6–1903 (1994); Ind.Code. §§ 34–4–12.4–1—.4–4 (1994); Ky.Rev.Stat.Ann. §§ 202A.400, 645.270 (Michie/Bobbs–Merrill 1994); La. Rev.Stat.Ann. § 9:2800.2 (West 1993); Minn. Stat. § 148.975 (1994); Mont.Code Ann. §§ 27–1–1102—1103 (1994); N.H.Rev.Stat. Ann. §§ 329:31, 330–A:22 (1994); N.J.Stat. Ann. § 2A:62A–16 (West 1993); Utah Code Ann. § 78–14a–102 (1994); Wash Rev.Code § 71.05.120 (1994).

## C. *Whether Psychologists Have a Common Law Duty to Warn is an Issue of First Impression in Missouri.*

Plaintiff contends that a common law duty to warn readily identifiable victims of the violent intentions of a psychotherapist's patient exists under Missouri common law based on the special relationship between Mr. Pope and the defendant psychologists, under the reasoning of *Tarasoff,* and based on the "special circumstances" of the case, including the foreseeability of harm to this specific victim.

This is an issue of first impression in Missouri. In *Sherrill v. Wilson,* 653 S.W.2d 661 (Mo. banc 1983), the Missouri Supreme Court held that treating physicians at a state mental institution did not owe a duty to protect the *general public.* The court specifically left open the issue of whether a duty was owed to a readily identifiable victim, because it found that "[t]he present Petition contains no allegation that the defendant physicians were aware that [the patient] posed a particular danger to the plaintiff's decedent." *Id.* at 666. *Sherrill* held that *Tarasoff,* and similar cases which have followed it, "are distinguishable from this one, and we do not have to decide whether we would follow them."

*Id.* The issue left open in *Sherrill* is squarely presented by the instant case.

In deciding whether Missouri would recognize this theory of liability, we look to whether Missouri follows particular policies and principles which led *Tarasoff* and the many other cases cited above to impose a duty on a psychologist to warn of a specific danger to a specific individual. Principles commonly relied upon by other states in imposing a duty to warn include the foreseeability of harm, the special relationship between the psychotherapist and patient, as well as the public policy of the states to discourage or prevent foreseeable harm. As stated in *Naidu*, 539 A.2d at 1072:

> The relationship giving rise to that duty may be found either in that existing between the therapist and the patient, as alluded to in *Tarasoff II*, or in the more broadly based obligation a practitioner may have to protect the welfare of the community.

*Id.* (citations omitted). In making this determination, the courts also consider the "magnitude of the burden to defendant of guarding against the injury and the consequences of placing that burden on the defendant." *Eckhardt*, 128 Ill.Dec. at 738, 534 N.E.2d at 1343 (citations omitted). *See also* cases cited Section IIA, IIB, *supra.* As discussed below, these are the very principles and policies Missouri has traditionally considered in determining whether a duty will be recognized.

### 1. *Relevant Principles of Missouri Law.*

### (a) *Public Policy of Missouri Favors Imposing Duty to Warn.*

In determining whether a duty exists here, we are guided by the Missouri Supreme Court's notions of the bases on which a duty may be imposed. *Hoover's Dairy Inc. v. Mid–Am. Dairymen Inc./Special Products, Inc.*, 700 S.W.2d 426 (Mo. banc 1985), stated:

> The judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; mor-

al blame society attaches to the conduct; the prevention of future harm; consideration of cost and ability to spread the risk of loss; the economic burden upon the actor and the community—the others.

*Id.* at 432 (citations omitted).

The social consensus of Missouri favors protection against the kind of injury alleged to have been suffered in this case. The number of children in the United States who are reportedly abused has tripled since 1980. Drinan, *Saving Our Children*, 26 Loy. U.Chi.L.J. 137, 143 (1995). Numerous states have reacted to this by imposing mandatory child abuse reporting laws and by allowing tort, as well as penal, liability of abusers. The State of Missouri joined this battle against abuse by enacting the Child Abuse Reporting Act which requires individuals, such as the defendants in this case, to report child abuse to the Division of Family Services. § 210.115.

■ The Missouri Supreme Court itself has also noted the importance of tort actions as a deterrent to child abuse. In *State ex rel. D.M. v. Hoester*, 681 S.W.2d 449, 452 (Mo. banc 1984), an action against the perpetrator, the Supreme Court stated that "the number of reports of child abuse cases appearing in a multitude of publications indicate the problem has reached epidemic proportions and apparently the legislature has determined the deterrent value of tort judgments as well as other available sanctions are necessary to stem the rising tide." Thus, it is clearly consistent with the stated public policy of this State to recognize tort liability where doing so will further the State's interest in protecting children from future abuse.

In addition, when the cost of imposing this duty and the economic burden upon the actor are balanced against the magnitude of preventable injury suffered, the outcome overwhelmingly weighs in favor of imposing a duty. The execution of the duty to warn only requires a simple telephone call to the victim or other appropriate authorities. The burden imposed on an individual in fulfilling this duty is greatly outweighed by the potential or actual harm suffered as a result of failure to fulfill this duty. Moreover, the

defendants in the instant case were already under a *legal* obligation to warn the Department of Family Services of the suspected abuse. § 210.115. The duty we recognize today thus does not impose any additional obligation to that which is already imposed on defendants under Missouri law. Indeed, the duty we recognize today is far narrower than is section 210.115, which requires reporting of all past or suspected future child abuse. We recognize a right to sue only for failure to warn of specific risks of future harm to readily identifiable victims.

### (b) *Special Relationship Between Physician/Patient.*

█ Similar to other states that have imposed a duty to warn, Missouri also recognizes that a duty to take action may exist if the parties are in a "special relationship." The general rule under Missouri common law is that a private person has no duty to protect another from deliberate criminal attacks by a third person. *Nappier,* 666 S.W.2d at 860. However, Missouri courts have specifically held that a duty to control the conduct of third persons will be imposed if a "special relationship" exists between the parties. In such a case, it is the relationship itself which provides the basis for the duty. *Hoover's Dairy* explained that:

> When the existence of a duty to use due care rests on a relationship between persons, the law has simply placed the actor under obligation for the benefit of another person—the plaintiff—in the given circumstances. Or, more simply, the law has determined that the interest of the plaintiff which has suffered invasion is entitled to legal protection at the hands of the defendant.

*Hoover's Dairy,* 700 S.W.2d at 432 (citations omitted). *See also* Restatement (Second) Torts § 315. Among the relationships which have been found to come within this category are those of "innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee." *R.C. v. Southwestern Bell Tel. Co.,* 759 S.W.2d 617, 620–21 (Mo. App.1988).

█ The concept of imposition of a legal duty on certain members of the medical profession in order to protect from future harm by a patient is also not new in Missouri. For instance, physicians are under a legal duty to report any patients who are infected with HIV to the Department of Health in order to protect the public health. §191.653.3. Physicians are also allowed to disclose confidential patient information to warn spouses and care givers of the HIV status of a patient, § 191.656.2, ostensibly in order to warn them of possible future harm. Other courts have noted that there is "no reason why a similar duty to warn should not exist when the 'disease' of the patient is a mental illness that poses an analogous risk of harm to others." *Peck,* 499 A.2d at 425 (citations omitted). For these reasons, and in keeping with the vast majority of courts which have considered this issue, we hold that the relationship between psychologists and their patients is the kind of "special" relationship on which liability can be based for failure to warn. *See, e.g., Naidu,* 539 A.2d at 1072; *McIntosh,* 403 A.2d at 509; *Almonte,* 851 F.Supp. at 40; *Lipari,* 497 F.Supp. at 189; *Littleton,* 39 Ohio St.3d at 92, 529 N.E.2d at 455.

### (c) *Foreseeability of Harm.*

█ Finally, we consider the foreseeability of harm in determining whether a duty exists in this case. Missouri recognizes that the "touchstone for the creation of a duty is foreseeability. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59, 62 (Mo. banc 1988). In such cases, the duty does not arise out of any "special relationship" between the parties, but rather arises "out of the defendant's knowledge of a dangerous condition, which imperils the plaintiff, as well as time and ability to prevent the attack." *Reed v. Hercules Constr. Co.,* 693 S.W.2d 280, 282 (Mo. App.1985).

*Kuhn v. Budget Rent–A–Car,* 876 S.W.2d 668 (Mo.App.1994), provides a good example of a situation in which defendant owed a duty to control the conduct of a third person based on the special circumstances of the case, including the foreseeability of potential inju-

ry. In that case, plaintiff's decedent was killed when her car was struck by a Budget Rent–A–Car vehicle being driven by an intoxicated off duty Budget employee. Plaintiff brought a wrongful death action against Budget Rent–A–Car, alleging that Budget negligently failed to prevent the off duty employee from driving the Budget vehicle while intoxicated. The issue in *Kuhn* was whether Budget owed a duty to the injured third party to control the conduct of the off duty employee.

*Kuhn* found that such a duty did exist. In support, it noted that "[s]pecial circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons." *Id.* at 673 (citations omitted). It further found that foreseeability is of utmost importance in determining whether a duty exists, for:

> It is generally stated that foreseeability that some injury might result from the act complained of normally serves as the paramount factor in determining the existence of a duty. When deciding if some injury was reasonably foreseeable, whether expressly or implicitly, courts examine what the actor knew or should have known.... [I]t is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it.

*Id.* at 672 (citations omitted). Thus, because a reasonably prudent person would have foreseen that failure to secure the Budget vehicle could result in danger to others, the court held that Budget owed a duty to the plaintiff. *Id.*

### 2. *Application of These Principles to This Case.*

■ In applying these principles to the instant case and in accord with the vast majority of other courts which have addressed this issue, we hold that the public policy of this State, in addition to the special

relationship between defendants and their patient, and the foreseeability of harm to Kelly, give rise to a duty on the part of defendants to warn appropriate authorities of the risk of future harm of Kelly by Mr. Pope. Specifically, we hold that when a psychologist or other health care professional knows or pursuant to the standards of his profession should have known that a patient presents a serious danger of future violence to a readily identifiable victim the psychologist has a duty under Missouri common law to warn the intended victim or communicate the existence of such danger to those likely to warn the victim including notifying appropriate enforcement authorities.[7] In so holding, this Court joins the well-established line of other jurisdictions which have imposed similar duties.

The facts alleged in the Petition establish that defendants should have reasonably foreseen that their patient posed a threat of serious future harm to Kelly, an identified victim. Defendants were specifically retained to counsel Mr. Pope regarding his abuse of Kelly. They began treatment and it is alleged they were aware of the possibility of continuing and future abuse. They nonetheless did not inform appropriate authorities while and even after they discontinued counseling Mr. Pope. For these reasons, we find the general rule that one is not liable for an intervening criminal act of a third person, does not apply in this case in which "it is alleged that the defendant had reason to anticipate the criminal act." *Bradley Center, Inc.,* 296 S.E.2d at 696 (citations omitted).

Judgment as to a common law duty to warn in Count III is reversed and remanded for further proceedings consistent with this opinion.

### III. *PRIVATE CAUSE OF ACTION AND NEGLIGENCE PER SE*

■ Plaintiff contends that Count IV states a claim for a statutorily created private cause of action based on the Child Abuse Reporting Act, section 210.115, and negligence *per se.* Plaintiff contends that a

---

7. We recognize only a duty to warn; there is no duty to actually control the conduct of the poten- tial wrongdoer.

private cause of action should be implied under section 210.115 because it was enacted for the benefit of a class of individuals (abused children) of which Kelly is a member.

The Child Abuse Reporting Act, section 210.115, is part of a child protection section that was established and is enforced by the Division of Family Services ("DFS"). The stated purpose of the child protection system is "to promote the safety of children and the integrity and preservation of their families by conducting investigations or family assessments in response to reports of child abuse or neglect." § 210.109(2). In furtherance of this, section 210.115 requires certain individuals, such as defendants, to report suspected child abuse to DFS "for the benefit of protecting children." *Shurn v. Monteleone,* 769 S.W.2d 188, 190 (Mo.App.1989). The Act provides that anyone who fails to report suspected child abuse is subject to criminal penalty in the form of a misdemeanor. § 210.165.

The Act does not expressly either establish or prohibit a right of action for civil enforcement. No Missouri courts have previously determined whether children such as Kelly have a private cause of action against those who fail to report. *Shurn v. Monteleone,* 769 S.W.2d 188 (Mo.App.1989), did hold that no private cause of action existed in favor of an individual who was the subject of a false report because that person was not within the class meant to be protected by the Act. However, that case is not determinative because Kelly is clearly within the class meant to be protected by the Act.

 Defendant also cites several federal court cases, applying Missouri law, which have refused to imply a private cause of action under the Child Abuse Reporting Act. *See Nelson v. Freeman,* 537 F.Supp. 602 (W.D.Mo.1982), *aff'd,* 706 F.2d 276 (8th Cir.1983); *Thelma D. v. Bd. of Educ.,* 669

F.Supp. 947 (E.D.Mo.1987); *Doe "A" v. Special Sch. Dist.,* 637 F.Supp. 1138 (E.D.Mo. 1986), *aff'd,* 901 F.2d 642 (8th Cir.1990). Of course, these cases are not binding authority. *Morrow v. Caloric Appliance Corp.,* 372 S.W.2d 41, 52 (Mo. banc 1963). In any event, they are distinguishable because they involved suits against *public* officials and, thus, involved an analysis of the "public duty doctrine." *See Nelson,* 537 F.Supp. 602 (W.D.Mo.1982) (suit against the Division of Family Services for negligent investigation); *Thelma,* 669 F.Supp. 947 (suit against a public teacher for failing to report suspected abuse by another teacher); *Doe "A",* 637 F.Supp. 1138 (suit against public school for failure to investigate actions of driver).[8]

 The issue of whether a private right of action exists under the Act is thus one of first impression for this Court. The creation of a private right of action by implication is not favored and the general trend under Missouri law is away from judicial inferences that a violation of a statute is personally actionable. The Missouri Supreme Court in *Johnson v. Kraft Gen. Foods,* 885 S.W.2d 334 (Mo. banc 1994), recently restated the factors to be considered in determining whether a private cause of action will be implied. In that case, the Supreme Court made it clear that a private right of action will be implied only in the narrowest of circumstances.

In *Johnson,* plaintiffs alleged that defendant violated section 454.505.10 by discharging plaintiff after receiving an order to garnish plaintiff's pay. Section 454.505 authorized the Director of the Division of Child Support Enforcement to enforce its provisions; it did not contain an express provision authorizing a private cause of action.

The court held that because the legislature established other means of enforcement, *Johnson* was within the rule that no private

---

8. Under the public duty doctrine, public officials will not be liable where the underlying act creates "only a public duty and not a duty to individuals...." *Nelson,* 537 F.Supp. at 607. The duty is held to be to the individual if "the duty imposed upon the public official by the statute is of such a nature that the performance of it will affect an individual in a manner different in kind

from the way it affects the public at large ..." *Id.* at 608 (citations omitted). *Scher v. Purkett,* 847 S.W.2d 76, 78 (Mo.App.1992), explained that "the rationale for this policy is to provide protection for modestly compensated public employees against multifarious claims and to allow the employees to perform their tasks without inappropriate distractions."

cause of action would be found unless there was a "clear implication of legislative intent to establish a private cause of action." *Id.* at 336. The court explained the rationale for the rule by stating that, because the legislature specifically gave authority to one party—the Division—to enforce the Act:

> It follows that the legislature would have manifested its intent in like manner had it intended to create additional or alternative means of enforcement. The failure to do so gives rise to the implication that the Division Director has the exclusive right to bring suit.

*Id.* at 336. The court held that where Johnson was not even within the class to be protected by the statute, no private cause of action would be implied. *Id.*

Some prior Missouri courts have held that being a member of the protected class is an indication of legislative intent to create a private cause of action, *see State ex rel. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99 (Mo.App.1984) [9]. The Supreme Court in *Johnson* brought this line of authority into question, however, to the extent it could be read to make mere membership in the protected class itself a sufficient basis on which to imply a private cause of action. *Johnson* stated:

> Even if Johnson is a member of the protected class of persons under the statute, the legislature has not, by establishing that class, manifested any intention to provide protection to class members by means of a private cause of action. Johnson's 'protected class' theory discounts the possibility that the legislature intended nothing more than state enforcement of the statutory violations.

*Id.* at 336. In distinguishing *State ex rel. Ashcroft v. Kansas City Firefighters Local*

No. 42, the Supreme Court noted that "while the 'protected class' theory endorsed by [*Kansas City Firefighters*] may be a viable factor in determining a 'clear implication' of legislative intent, it does not, standing alone, negate the implication of exclusivity by the presence of an expressly stated means of enforcement." *Id.* at 336–37.[10]

There is no doubt that Kelly is within the class to be protected by the Act. However, because the Act makes individuals who do not report abuse subject to criminal penalties but does not provide a civil remedy, we do not believe Plaintiff has demonstrated a clear legislative intention to provide for civil remedies. Because this Court finds no private cause of action can be implied under the Child Abuse Reporting Act, section 210.115, the alleged breach of the Act also does not amount to negligence *per se*. *Imperial Premium Fin. v. Northland Ins. Co.*, 861 S.W.2d 596, 599 (Mo.App.1993). For these reasons, the trial court's dismissal of Count IV is affirmed.

## IV. AIDING AND ABETTING INTENTIONAL CHILD ABUSE

Plaintiff contends on appeal that Count I of her Petition states a claim for aiding and abetting child abuse. In reviewing the dismissal of a Petition for failure to state a claim on which relief can be granted, this Court will treat all facts alleged as true and reverse the trial court's order only if the facts alleged in the Petition would, upon proof, entitle plaintiff to relief. *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 263 (Mo.App.1984). A dismissal will be affirmed where the "petition wholly fails to state a cause of action, that is, where the facts essential to recovery are not pleaded." *Id.*

---

9. In *Kansas City Firefighters*, the court held that a civil remedy was available in tort for damages where plaintiff was "a member of the class for whose special benefit the statute was enacted." *Id.* at 110. Significantly, the statute did not contain *any* enforcement provision.

10. *Johnson* is consistent with the earlier case of *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944 (Mo. banc 1982), in which the Supreme Court explained that:

> Such an intention is usually imputed to the legislature where the court decides that the statute was passed for the protection of a class of which the plaintiff is a member. The obvious difficulty with this theory, however, is that even conceding a legislative intention to protect this class it has not evidenced any intention of achieving this protection by the imposition of a civil liability, since the only remedy provided by the statute is a criminal or penal proceeding.

*Id.* at 948 (citations omitted).

The tort of aiding and abetting is based on Restatement (Second) of Torts § 876(b) (1965), which provides that:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... *knows* that the other's conduct constitutes a breach of duty and gives *substantial assistance or encouragement* to the other so to conduct himself.

(emphasis added). The defendant must affirmatively act to aid the primary tortfeasor; neither failure to object to the tortious act nor defendant's mere presence at the commission of the tort is sufficient to charge one with responsibility. Prosser and Keeton, The Law of Torts § 46 at 323–24 (5th ed.1984). *See also State v. Clark*, 596 S.W.2d 747, 751 (Mo.App.1980) ("[i]n order to 'aid and abet' in the commission of a crime, it is necessary that a defendant associate himself in some way with the principal in bringing about the commission of the crime, and mere negative acquiescence is not sufficient").

Plaintiff has not cited any Missouri case which recognizes a claim for aiding and abetting in the commission of a tort, and none were located through the Court's own research.[11] Even were this cause of action recognized, however, plaintiff did not plead facts which support a claim of aiding and abetting against defendants. Plaintiff merely states that Drs. Ray and Strnad were in agreement with Ms. Kopin "to shield and protect said Lester N. Pope from further discovery, reporting and criminal prosecution regarding his said abuse of Kelly with the intent to thereby aid and abet said Lester N. Pope...." These facts do not establish that defendants affirmatively acted by giving substantial assistance or encouragement to Mr. Pope to abuse Kelly. Judgment of dismissal as to Count I is affirmed.

## V. *PRIMA FACIE TORT*

■ Plaintiff contends that Count V states an alternative cause of action for prima facie tort. The elements of prima facie tort are: (1) an intentional lawful act by defendant; (2) an intent to cause an injury to plaintiff; (3) injury to the plaintiff; and (4) an absence of any justification or an insufficient justification for the defendant's act. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 315 (Mo. banc 1993). Moreover, *Nazeri* noted a prima facie tort claim is "not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories, or a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action. Instead, it is a particular and limited theory of recovery with specific elements, as any other tort." *Id.*

■ Plaintiff has incorporated the elements of a prima facie tort into Count V, but has failed to plead facts which establish the above elements. Most significantly, while prima facie tort requires an intentional *lawful* act, plaintiff stated facts which show defendants committed an *unlawful* act. The Petition alleges that defendants decided "not to warn Kelly Pope or Nancy Copin [sic] ... or to report or cause to be reported their knowledge and suspicions of the abuse," an *unlawful* act in violation of section 210.115. Plaintiff cannot plead facts which constitute an unlawful statutory violation, then merely assert that such conduct was lawful in an attempt to state a claim for prima facie tort. *Nazeri*, 860 S.W.2d at 315. Plaintiff's remaining conclusory allegations are not sufficient to support a cause of action for prima facie tort. *Southwestern Bell Tel. Co. v. Buie*, 689 S.W.2d 848, 850 (Mo.App.1985). Judgment of dismissal as to Count V is affirmed.

## VI. *APPOINTMENT OF DEFENDANT AD LITEM*

■ Plaintiff argues that the trial court committed reversible error by appointing the widow of defendant Dr. Strnad as the defendant ad litem. Both plaintiff and defendant filed motions for the appointment of a defendant ad litem; plaintiff nominated attorney

---

11. While no Missouri courts have recognized a tort based on Restatement (Second) of Torts § 876(b), Missouri courts have *rejected* claims fashioned after the Restatement (Second) of Torts § 876(c). *See Richardson v. Holland*, 741 S.W.2d 751 (Mo.App.1987) (rejecting claim under Restatement (Second) of Torts § 876(c)).

**316**

John Whiteside and Donna Strnad requested that she be appointed defendant ad litem. The trial court appointed Donna Strnad as defendant ad litem on July 26, 1994. Plaintiff contends that the appointment of Donna Strnad gives defendants an unfair advantage because the jury will be unduly more sympathetic to the "grieving widow." Plaintiff also contends that the appointment created a conflict of interest between Donna Strnad, Dr. Ray, and their insurer.

 A trial court's decision will not be reversed on appeal unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The appointment of a defendant ad litem is governed by section 537.021(2). It provides that, in a cause of action such as this in which the deceased was insured and damages may be recovered from the deceased defendant's liability insurer, the trial court "shall appoint at the request of the plaintiff or other interested party a *qualified* person to be known as a defendant ad litem." § 537.021, subd. 1(2) (emphasis added).

Plaintiff does not assert that Donna Strnad was not a "qualified" person to serve as defendant ad litem. Rather, plaintiff argues that the appointment of Donna Strnad created a conflict of interest under *McConnell v. Kelly,* 860 S.W.2d 362 (Mo.App.1993). *McConnell* held that an insurer of a deceased defendant was not a proper defendant ad litem when the issue of coverage was contested. However, this holding was based on the inherent conflict of interest created by the insurer denying coverage but also being forced as defendant ad litem to claim and prove facts showing that coverage existed. *Id.*

Plaintiff in this case has not demonstrated that there is an issue of coverage or that any other potential conflict of interest exists. Moreover, the record indicates that Donna Strnad has successfully acted in her capacity as defendant ad litem. The record reflects that upon her appointment Donna Strnad directly challenged the sufficiency of the pleadings and claims against Bruce Strnad in

a motion to dismiss. Therefore, the trial court did not commit reversible error by appointing Donna Strnad and Point II is denied.

For the reasons stated above, the trial court's dismissal of the portion of Count III alleging common law negligence for failure to warn is reversed and remanded. The judgment dismissing all other claims is affirmed, as is the appointment of Donna Strnad as defendant ad litem.

All concur.